BRINDLE, Appellant,

v.

STATE MEDICAL BOARD OF OHIO, Appellee.

[Cite as *Brindle v. State Med. Bd. of Ohio,* 168 Ohio App.3d 485, 2006-Ohio-4364.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 05AP–1067.

Decided Aug. 24, 2006.

486

Porter, Wright, Morris & Arthur, L.L.P., and Eric J. Plinke, for appellant.

Jim Petro, Attorney General, and Steven McGann, Assistant Attorney General, for appellee.

———

PETREE, Judge.

{¶ 1} Appellant, Fred A. Brindle, M.D., appeals from a judgment of the Franklin County Court of Common Pleas that affirmed an order of appellee, State Medical Board of Ohio, suspending Dr. Brindle's certificate to practice medicine indefinitely, but for not less than 90 days. For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2} On August 8, 2001, and in lieu of formal proceedings, appellant entered into a "Step I Consent Agreement" with the board. The parties entered the agreement after appellant was hospitalized on May 18, 2001, at Providence Hospital in Sandusky, Ohio, for severe depression, and subsequently hospitalized at University Hospitals of Cleveland, where he was diagnosed with bipolar disorder and chemical dependency. The consent agreement provided that appellant's medical license would be suspended for an indefinite period of time. The consent agreement set forth the conditions for appellant's reinstatement. Included within those conditions was the requirement that appellant submit to random weekly urine screenings for drugs and alcohol.

{¶ 3} On December 10, 2003, the board sent appellant a letter notifying him as follows:

In accordance with Chapter 119., Ohio Revised Code, you are hereby notified that the State Medical Board of Ohio [Board] intends to determine whether or not to limit, revoke, permanently revoke, suspend, refuse to register or reinstate your certificate to practice medicine and surgery, or to reprimand or place you on probation for one or more of the following reasons * * *.

{¶ 4} Specifically, the letter alleged that appellant failed to submit urine specimens for drug and alcohol screening during the weeks beginning on June 1, June 15, July 27, August 3, August 10, September 10, and October 19, 2003. It also alleged that appellant submitted two "declarations of compliance," despite the fact that he had not submitted urine specimens for drug and alcohol screening during the aforementioned weeks. The letter stated that appellant's failure to produce the urine specimens for screening constituted a "[v]iolation of the conditions of limitation placed by the board upon a certificate to practice," as that clause is used in R.C. 4731.22(B)(15). In addition, the letter stated that appellant's October 15, 2003 declaration of compliance constituted "[m]aking a false, fraudulent, deceptive, or misleading statement in the solicitation of or advertising for patients; in relation to the practice of medicine and surgery, osteopathic medicine and surgery, podiatry, or a limited branch of medicine; or in securing or attempting to secure any certificate to practice or certificate of registration issued by the board," as that clause is used in R.C. 4731.22(B)(5).

{¶ 5} Pursuant to R.C. Chapter 119, appellant requested a hearing on the matter. On August 24, 2004, a hearing was held before hearing examiner Sharon W. Murphy. At the hearing, appellant admitted that he had not fully complied with the requirement contained within the consent agreement that he submit weekly urine specimens for screening.

{¶ 6} On October 5, 2004, the hearing examiner issued a report and recommendation that included a summary of the evidence, findings of fact, conclusions of law, and a proposed board order. The hearing examiner concluded that appellant had violated the terms of the consent agreement by his failure to fully comply with the urine-screening requirement. Additionally, the hearing examiner concluded that appellant had published a false statement by means of the declaration of compliance he signed on October 15, 2003. The hearing examiner found no violation resulting from appellant's signing of a declaration of compliance on August 11, 2003. The proposed order provided for appellant's reinstatement, but outlined limitations and restrictions on appellant's certificate to practice.

{¶ 7} On October 15, 2004, the state, through an assistant attorney general, filed objections to the hearing examiner's report and recommendation. In the objections, the state argued that the hearing examiner's conclusion of law relating to the declaration of compliance appellant signed on August 11, 2003, was erroneous. In addition, the state argued that the issue of appellant's reinstatement was not properly before the hearing examiner at the hearing.

{¶ 8} On October 20, 2004, appellant filed objections to the report and recommendation. Appellant agreed with the hearing examiner's conclusion that his license should be reinstated. However, he disagreed with the hearing examiner's conclusion that he had violated the consent agreement. Appellant

argued that the board's failure to act on his request for reinstatement constituted a material breach of the agreement and that the breach discharged his obligations under the agreement. In addition, on October 28, 2004, appellant filed a motion to strike the state's objections. By letter dated November 9, 2004, the motion was denied.

{¶ 9} On November 10, 2004, the board considered this matter. Appellant, his counsel, and an assistant attorney general appeared before the board. At the meeting, Dr. Steinbergh, a board member, offered an amendment that substituted language for a portion of the hearing examiner's conclusions of law. The board voted to approve the amendment. Additionally, Dr. Egner, another board member, offered an amendment to the proposed order of the hearing examiner. The board approved the amendment to the proposed order. Subsequently, the board approved and confirmed the hearing examiner's proposed findings of fact, conclusions, and order, as amended, in this matter. The board's order, which was mailed December 3, 2004, suspended appellant's certificate to practice medicine indefinitely, but for not less than 90 days. The order set forth the conditions for the reinstatement or restoration of appellant's certificate to practice.

{¶ 10} On December 14, 2004, and pursuant to R.C. 119.12, appellant appealed the board's order to the Franklin County Court of Common Pleas. Appellant moved for an order staying the board's order. On February 14, 2005, the trial court denied the motion. On September 9, 2005, the trial court rendered its decision affirming the order of the board. The trial court found the order to be supported by reliable, probative, and substantial evidence, and in accordance with law. Appellant timely appeals from that decision and sets forth the following three assignments of error for our review:

FIRST ASSIGNMENT OF ERROR:

The trial court's decision is in error because the board's order is contrary to law in that Dr. Brindle was disciplined despite the board's prior breach of agreement concerning his reinstatement request and refusal to consider reinstatement at hearing.

SECOND ASSIGNMENT OF ERROR:

The trial court decision is in error where it sustains the board's order that is contrary to law because it was based upon ex parte communications and violated appellant's due process rights.

THIRD ASSIGNMENT OF ERROR:

The trial court erred in finding that the board's order was in accordance with law despite the fact that the board is not entitled under R.C. Ch. 119 to object to the hearing examiner's R & R.

{¶ 11} Before we address appellant's assignments of error, we will outline the standard of review for administrative appeals pursuant to R.C. 119.12. Pursuant to R.C. 119.12, when a common pleas court reviews an order of an administrative agency, it must consider the entire record and determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 110–111, 17 O.O.3d 65, 407 N.E.2d 1265; see, also, *Andrews v. Bd. of Liquor Control* (1955), 164 Ohio St. 275, 280, 58 O.O. 51, 131 N.E.2d 390. The evidence required by R.C. 119.12 has been defined as follows:

(1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true.

(2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue.

(3) "Substantial" evidence is evidence with some weight; it must have importance and value.

(Footnotes omitted.) *Our Place, Inc. v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303.

{¶ 12} The common pleas court's "review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'" *Lies v. Ohio Veterinary Med. Bd.* (1981), 2 Ohio App.3d 204, 207, 2 OBR 223, 441 N.E.2d 584, quoting *Andrews,* 164 Ohio St. at 280, 58 O.O. 51, 131 N.E.2d 390.

{¶ 13} An appellate court's review of an administrative decision is even more limited than that of a common pleas court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 614 N.E.2d 748. In *Pons,* the Supreme Court of Ohio stated:

While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the medical board or a trial court. Instead, the appellate court must affirm the trial court's judgment.

Id. at 621, 614 N.E.2d 748.

{¶ 14} However, an appellate court does have plenary review of purely legal questions. *Steinfels v. Ohio Dept. of Commerce, Div. of Secs.* (1998), 129 Ohio App.3d 800, 803, 719 N.E.2d 76.

{¶ 15} Appellant argues in his first assignment of error that the trial court erred in affirming the board's order because the board acted contrary to law by disciplining him even though the board already had materially breached the consent agreement. Appellant contends that the board's failure to act upon his request for reinstatement constituted a material breach of the consent agreement, thereby eliminating his obligation to comply with the conditions of the consent agreement. Additionally, appellant argues that the board materially breached the consent agreement by its "unsustainable" reading of the agreement. The board argues that it did not breach the consent agreement.

{¶ 16} Regarding the conditions for appellant's reinstatement, the consent agreement provided:

8. The BOARD shall not consider reinstatement of DOCTOR BRINDLE'S certificate to practice medicine and surgery unless and until all of the following conditions are met:

a. DOCTOR BRINDLE shall submit an application for reinstatement, accompanied by appropriate fees, if any;

b. DOCTOR BRINDLE shall demonstrate to the satisfaction of the BOARD that he can resume practice in compliance with acceptable and prevailing standards of care under the provisions of his certificate. Such demonstration shall include but shall not be limited to the following:

* * *

ii. Evidence of continuing full compliance with an aftercare contract or consent agreement.

* * *

c. DOCTOR BRINDLE shall enter into a written consent agreement including probationary terms, conditions and limitations as determined by the BOARD or, if the BOARD and DOCTOR BRINDLE are unable to agree on the terms of a written CONSENT AGREEMENT, then DOCTOR BRINDLE further agrees to abide by any terms, conditions and limitations imposed by Board Order after a hearing conducted pursuant to Chapter 119. of the Ohio Revised Code.

{¶ 17} Appellant argues that the board should have acted upon his request for reinstatement because he had met the requirements of the agreement. The consent agreement stated that appellant's suspension was indefinite and set forth the conditions for appellant's reinstatement. However, it provided no timetable for the board to consider appellant's reinstatement upon its receipt of a proper request for reinstatement. Under the terms of the consent agreement, the fact that appellant requested reinstatement did not mandate the board's consideration of the issue. A submission of a request for reinstatement was not the only

requirement set forth in paragraph 8 that had to be met before the board could consider reinstatement. The conditions for appellant's reinstatement also included the requirement that appellant demonstrate "to the satisfaction of the BOARD" that he could resume practice in compliance with acceptable and prevailing standards of care under the provisions of his certificate.

{¶ 18} In regard to paragraph 8.b.ii., the parties dispute whether appellant was required to comply with an aftercare contract and the consent agreement, or just the consent agreement. Barbara Jacobs, the public services administrator for the board, testified at the hearing before the hearing examiner that appellant was required under the consent agreement to demonstrate continuing compliance with an aftercare contract. Appellant argues that the terms of the consent agreement do not support such an interpretation, and, therefore, the board's refusal to act on the reinstatement request was a result of its "unsustainable" interpretation of the consent agreement. In support of that argument, appellant notes that the consent agreement required him to demonstrate "[e]vidence of continuing full compliance with an aftercare contract *or* consent agreement." (Emphasis added.) Appellant contends that the board "is attempting to change the word 'or' in paragraph 8.b.ii to read 'and' because it was this unsustainable interpretation by Ms. Jacobs that led to Dr. Brindle not being reinstated."

{¶ 19} Regarding appellant's citation of the use of the disjunctive between "aftercare contract" and "consent agreement," we observe that paragraph 8.b.ii. must be read in context. As discussed above, paragraph 8.b. provided that appellant was required to demonstrate "to the satisfaction of the BOARD that he can resume practice in compliance with acceptable and prevailing standards of care." Additionally, paragraph 8.b. provided that "[s]uch demonstration shall include *but shall not be limited to the following* * * *." (Emphasis added.) In view of those two clauses, we find that the consent agreement authorized the board to require evidence of continuing compliance with an aftercare contract, in addition to evidence of continuing compliance with the consent agreement, before it would be satisfied that appellant can return to practice in compliance with the applicable standards of care.

{¶ 20} Based on the foregoing, and contrary to appellant's arguments, we find that the board did not materially breach the consent agreement and that it did not act contrary to law in not acting upon appellant's request for reinstatement. Therefore, we overrule appellant's first assignment of error.

{¶ 21} By his second assignment of error, appellant argues that the trial court erred in affirming the board's order when that order was based upon ex parte communications that violated due process. Appellant argues that at least two board members, Drs. Egner and Steinbergh, engaged in ex parte communications with board staff, including Lauren Lubow, who is employed by the board

as its senior executive staff attorney. Appellant asserts that the existence of these alleged ex parte communications was demonstrated by the fact that amendments to the report and recommendation were created prior to the hearing before the board and by the fact that the amendments contained legal terms. The board argues that communications between Ms. Lubow and board members are not ex parte communications.

{¶ 22} Ohio Adm.Code 4731–13–34(A) mandates that members of the board must base their decisions only on the evidence of record and that no other information may be considered. Additionally, pursuant to Ohio Adm.Code 4731–13–34(B), board members are prohibited from initiating or considering ex parte communications concerning a substantive matter related to a pending adjudicatory proceeding. In the case at bar, appellant essentially argues that communications between members of the board and Ms. Lubow, a board attorney, constituted ex parte communications, as prohibited by Ohio Adm.Code 4731–13–34(B).

{¶ 23} In a letter dated November 15, 2004, appellant requested, pursuant to Ohio Adm.Code 4731–13–34(D),[1] the production of an affidavit from any board member who had ex parte communications concerning the pending adjudicatory proceeding. On November 16, 2004, the executive director of the board sent a letter to counsel for appellant indicating that no ex parte communications were acknowledged during the consideration of appellant's case,[2] and, therefore, Ohio Adm.Code 4731–13–34(D) was inapplicable. Consequently, appellant's request was denied.

{¶ 24} Subsequently, appellant submitted a public records request for board records relating to appellant from August 24 to December 15, 2004, including records related to Dr. Steinbergh's amendment that was offered at the November 10, 2004 meeting, and any records related to the preparation of that amendment. In response to appellant's public records request, Ms. Lubow provided appellant's counsel with electronic copies of the amendments to the hearing examiner's conclusions and to her proposed order. The provided documentation indicated that Ms. Lubow prepared the amendments on November 10, 2004. According to Ms. Lubow's affidavit that is part of the record, her duties, as an employee of the board, include assisting board members by drafting, for presentation at public board meetings, alternative findings, conclusions, and orders to the proposed reports and recommendations that are before the board for consideration.

---

1. Ohio Adm.Code 4731–13–34(D) permits any party to request that the recipient of the ex parte communication file an affidavit indicating the substance of the ex parte communication.

2. Pursuant to Ohio Adm.Code 4731–13–34(C), if ex parte communications occur, the board member must publicly disclose the source of any ex parte or attempted ex parte communications pertaining to a substantive issue.

{¶ 25} Contrary to appellant's assertions, any communications between the board and Ms. Lubow were not ex parte communications. Regarding this issue, we note that there is a difference between legal representation of state agencies in courts or tribunals and legal advice given by in-house counsel to state agencies on day-to-day matters. See *State ex rel. Leslie v. Ohio Hous. Fin. Agency,* 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, at ¶ 36 (finding that R.C. 109.02 "is directed toward the legal *representation* of state agencies and officers in *courts or tribunals* instead of legal *advice* given by in-house counsel to state agencies and officers on day-to-day matters." (Emphasis sic)). In *Leslie,* the Supreme Court of Ohio determined that the attorney-client privilege applies to state agencies and their in-house counsel, even if that counsel is not an assistant attorney general. Id. at ¶ 43. Here, Ms. Lubow was a staff attorney for the board and had a nonadversarial role in the administrative proceedings. Ohio Adm.Code 4731–13–34 does not prohibit board members from consulting with in-house counsel regarding issues it must address and resolve. In other words, Ohio Adm.Code 4731–13–34 does not prohibit communications between the board and a member of its administrative staff who is an attorney. Therefore, appellant's argument that the board violated his due process rights because its order was based on ex parte communications is not persuasive.

{¶ 26} Accordingly, we overrule appellant's second assignment of error.

{¶ 27} Under his third assignment of error, appellant argues that the trial court erred in affirming the board's order because the board was impermissibly permitted to object to the hearing examiner's report and recommendation.

{¶ 28} R.C. 119.09 provides: "The party may, within ten days of receipt of such copy of such written report and recommendation, file with the agency written objections to the report and recommendation, which objections shall be considered by the agency before approving, modifying, or disapproving the recommendation." R.C. 119.01(G) defines "party" as "the person whose interests are the subject of an adjudication by an agency." R.C. 119.01(F) defines "person" as "a person, firm, corporation, association, or partnership."

{¶ 29} Ohio Adm.Code 4731–13–15(C) provides that "[e]ither representative of record may, within ten days of receipt of the hearing examiner's report and recommendation, file written objections to the report and recommendation." Appellant argues that Ohio Adm.Code 4731–13–15 is an invalid rule because it is contrary to law. Appellee maintains that the rule is valid.

{¶ 30} "It is axiomatic that administrative rules are valid unless they are unreasonable, or in clear conflict with the statutory intent of the legislation governing the subject matter. When the potential for conflict arises, the proper subject for determination is whether the rule contravenes an express provision of

the statute." *Woodbridge Partners Group, Inc. v. Ohio Lottery Comm.* (1994), 99 Ohio App.3d 269, 273, 650 N.E.2d 498. The Supreme Court of Ohio has stated that "administrative rules, in general, may not add to or subtract from * * * the legislative enactment." *Cent. Ohio Joint Vocational School Dist. Bd. of Edn. v. Admr., Ohio Bur. of Emp. Servs.* (1986), 21 Ohio St.3d 5, 10, 21 OBR 269, 487 N.E.2d 288. "[A]n impermissible addition to or subtraction from a statute is one means of creating a clear conflict." *Franklin Iron & Metal Corp. v. Ohio Petroleum Underground Storage Tank Release Comp. Bd.* (1996), 117 Ohio App.3d 509, 515, 690 N.E.2d 1310.

{¶ 31} R.C. 119.09 provides that a person whose interests are the subject of an adjudication by an agency may file objections to a report and recommendation before the agency approves, modifies, or disapproves the recommendation. However, it does not expressly prohibit a representative of the agency from filing objections to the report and recommendation. We conclude that the rule permitting such a filing by the representative of the board is reasonable, does not impermissibly add to the legislative enactment, and does not clearly conflict with the statutory intent of the General Assembly in enacting R.C. 119.09.

{¶ 32} Moreover, appellant cannot demonstrate that he was prejudiced as a result of the filing of objections by the assistant attorney general on behalf of the state. Appellant argues that the filing of the board's objections to the hearing examiner's report and recommendation was prejudicial because it enabled the board an opportunity to rebut the hearing examiner in advance of the board's deliberations. We find that argument unpersuasive, because the same main arguments made in the objections were made at the hearing before the members of the board. Thus, even if the board had granted appellant's motion to strike the state's objections, the arguments set forth by the objections would have been orally presented at the hearing before the board for its due consideration.

{¶ 33} Considering the foregoing, we overrule appellant's third assignment of error.

{¶ 34} Having overruled all three of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

BROWN and McGRATH, JJ., concur.