OPINION
{¶ 1} Plaintiff-appellant, Lorrie A. Cosby, appeals from a judgment of the Franklin County Court of Common Pleas affirming an order of the Franklin County Department of Job and Family Services ("FCDJFS") that revoked plaintiff's certification and contract to operate a type B family day-care home and dismissed plaintiff's appeal of that order. *Page 2 
Because the agency's revocation order is in accordance with law, we affirm the trial court's judgment.
 {¶ 2} The material facts are not in dispute. In 1995, FCDJFS certified plaintiff pursuant to R.C. 5104.11 to operate a type B family day-care home providing publicly funded child care. See R.C. 5104.01(F). To receive certification as a publicly funded child care provider, plaintiff was required by statute to comply with the child care laws in R.C. Chapter 5104 and any rules adopted under the chapter. See R.C.5104.11, 5104.31 and 5104.32(B)(4). See, also, Ohio Adm. Code 5104:2-14 (setting forth the administrative rules regarding certification of type B day-care homes). Plaintiff's type B day-care certification was valid for 12 months but was subject to earlier revocation if FCDJFS determined revocation was necessary; the certification was renewable annually upon plaintiff's continued compliance with the child care statutes and rules. R.C. 5104.11, 5104.32(B)(4).
 {¶ 3} When FCDJFS initially certified plaintiff in 1995 as a type B family day-care provider, the child care laws then in effect prohibited persons who had been convicted of or pleaded guilty to certain criminal offenses, not including forgery, from operating a type B family day-care home. See R.C. 5104.013(D) as enacted by Am. H.B. No. 694, effective November 11, 1994, and R.C. 5104.09 as enacted by Am. Sub. S.B. No. 38, effective October 29, 1993. Effective May 18, 2005, the General Assembly amended the child care laws to prohibit persons convicted of additional disqualifying offenses including forgery, a felony offense codified at R.C. 2913.31, from owning or operating a type B day-care *Page 3 
home. See R.C. 5104.013(D)(2)(a) and 5104.09(A)(1)(b). The General Assembly made the prohibitions expressly subject to agency "rules specifying exceptions to the prohibitions in [R.C. 5104.013 and 5104.09] for persons who have been convicted of an offense listed in [the statutes] but meet rehabilitation standards set by the [agency]." See R.C. 5104.013(G) and 5104.09(D). The rules adopted under R.C.5104.013(G) and 5104.09(D) are set forth in Ohio Adm. Code5101:2-14-11(N) and (O) for misdemeanor offenders and (Q) for felony offenders.
 {¶ 4} From 1996 to 2005, FCDJFS annually renewed plaintiff's certification as a type B day-care provider, last contracting with her in November 2005 for a one-year re-certification period commencing on December 1, 2005. Acting pursuant to rules set forth in Ohio Adm. Code5101:2-14-06(B) and (C), and 5101:2-14-11(B), FCDJFS notified plaintiff in March 2006 it intended to revoke her certification and contract to operate a type B day-care home because her criminal history made her non-compliant with R.C. 5104.09(A)(1)(b) and Ohio Adm. Code 5101:2-14. Specifically, plaintiff's criminal history reflects she pleaded guilty in 1986 to multiple counts of felony forgery, for which she was ordered to serve concurrent one and one-half year terms of imprisonment; the sentence was suspended, and she completed a court-ordered five-year probationary period in 1991.
 {¶ 5} Plaintiff requested an administrative hearing under Ohio Adm. Code 5101:2-14-40 for a review of the proposed revocation of her certification to provide publicly funded child care. Following a May 4, 2006 hearing on the matter, the hearing officer *Page 4 
concluded (1) the May 18, 2005 amendment to R.C. 5104.09, prohibiting felony forgery offenders from owning or operating a type B day-care home, applies retroactively to plaintiff, and (2) the applicable child care statutes and administrative rules "are very clear" that plaintiff's forgery offenses disqualify her as a type B day-care provider. On May 17, 2006, the hearing officer issued an order affirming FCDJFS' decision to revoke plaintiff's contract and certification to own or operate a type B family day-care home.
 {¶ 6} Pursuant to R.C. 119.12, plaintiff appealed FCDJFS' revocation order to the Franklin County Court of Common Pleas. Finding the order supported by reliable, probative, and substantial evidence and in accordance with law, the court affirmed the agency's revocation of plaintiff's contract and certification to operate a type B family day-care home and entered judgment dismissing her appeal. Plaintiff appeals, assigning the following errors:
 1. The trial court erred in ruling that the hearing officer's decision was supported by reliable, probative and substantial evidence and that R.C. 5104.09 was applied prospectively rather than retroactively to Appellant.
 2. The trial court erred in failing to find that FCDJFS erred in revoking Appellant's license on the basis of a violation of 5104.09 because the agency renewed her license on or about November 9, 2005 for one year knowing that she had a felony conviction for forgery. The agency is prohibited from revoking Appellant's license under the doctrine of waiver, laches, and estoppel.
 3. OAC 5101:2-14-06 which bars convicted felons from running Type B Family Day Care Homes even unless [sic] they receive a pardon from the governor is in conflict with R.C. 5104.09(D) which requires that the director of job and family services shall adopt rules which allow persons who *Page 5 
have been convicted of an offense listed in that division but meet rehabilitation standards to run Type B Family Day Care Centers.
 {¶ 7} Under R.C. 119.12, when a common pleas court reviews an order of an administrative agency, the common pleas court must consider the entire record to determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 110-111. In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency generally are not conclusive. Id. at 111.
 {¶ 8} An appellate court's review of an administrative decision is more limited than that of a common pleas court. Pons v. Ohio State Med.Bd. (1993), 66 Ohio St.3d 619, 621, rehearing denied,67 Ohio St.3d 1439. While the common pleas court must review the evidence, this is not a function of the appellate court. Id. The appellate court is to determine only whether the common pleas court abused its discretion. Id. Absent an abuse of discretion, a court of appeals may not substitute its judgment for that of an administrative agency or the common pleas court.Pons, supra. An appellate court does, however, have plenary review of questions of law. Univ. Hosp., Univ. of Cincinnati College of Medicinev. State Emp. Relations Bd. (1992), 63 Ohio St.3d 339, paragraph one of the syllabus; Nye v. Ohio Bd. of Examiners of Architects,165 Ohio App.3d 502, 2006-Ohio-948, at ¶ 11. *Page 6 
 {¶ 9} As a threshold matter, we must address whether plaintiff complied with the dual filing requirements of R.C. 119.12, which governs appeals from agency decisions. The Supreme Court of Ohio recently construed the filing requirements and concluded that to perfect an appeal of an agency decision "[a] party aggrieved by an administrative agency's order must file the original notice of appeal with the agency and a copy with the court of common pleas." Hughes v. Ohio Dept. ofCommerce, 114 Ohio St.3d 47, 2007-Ohio-2877, paragraph two of the syllabus. The Supreme Court of Ohio concluded the common pleas court lacks jurisdiction over an administrative appeal if the aggrieved party does not strictly comply with R.C. 119.12 when filing the notice of appeal. Id. at 52-53. See, also, Nibert v. Ohio Dept. of Rehab. Corr. (1998), 84 Ohio St.3d 100 (concluding a party's filing a copy of a notice of appeal under R.C. 119.12 is jurisdictional).
 {¶ 10} Here, FCDJFS contends the common pleas court lacked subject matter jurisdiction over plaintiff's administrative appeal because, contrary to the filing requirements in R.C. 119.12, plaintiff filed an original notice of appeal with the court and a copy of the notice of appeal with the agency, as evidenced by the certificate of service on the notice of appeal filed with the court of common pleas.
 {¶ 11} Our review of this issue is hampered by the fact that the record of the administrative proceedings, including the notice of appeal filed with the agency, is missing from this court's record. This court has conducted an exhaustive search for the record of proceedings and has been unable to locate it. As part of our search, counsel for both parties were contacted. Counsel for plaintiff, believing the record of proceedings may *Page 7 
never have been filed with the court, filed a motion to add an additional assignment of error that the case be dismissed for FCDJFS' failure to prepare and certify the record of proceedings from the agency. Counsel for FCDJFS filed a motion to supplement the record with a document receipt showing the agency received plaintiff's court documents at 11:44 a.m. on May 26, 2006, and plaintiff's notice of appeal was filed with the court at 10:50 a.m. on May 26, 2006.
 {¶ 12} We deny the motion to add an assignment of error and grant the motion to supplement the record. The official court docket indicates the record of proceedings was filed with the common pleas court, and the decision of that court indicates it reviewed the record. We can only conclude the record of proceedings was lost following the proceedings in the common pleas court. We thus have no way to compare the notice of appeal filed in the common pleas court with that filed with the agency. Because FCDJFS asserts lack of subject matter jurisdiction, it has the burden to show plaintiff failed to comply with the filing requirements of R.C. 119.12. FCDJFS is unable to meet that burden due to the missing record. Therefore, FCDJFS' argument lacks merit insofar as it contends this administrative appeal should be dismissed on jurisdictional grounds.
 {¶ 13} In addressing the merits of the appeal, we note the parties do not dispute the material facts, and our inquiries here do not center on whether the common pleas court erred in finding FCDJFS' order was based on reliable, probative or substantial evidence. Rather, in each of plaintiff's assignments of errors we review whether the common pleas court erred in finding the agency's order to be in accordance with law. *Page 8 
I. First Assignment of Error {¶ 14} In her first assignment of error, plaintiff contends (1) FCDJFS erred in retroactively applying R.C. 5104.09, as amended effective May 18, 2005, and (2) the common pleas court erred in determining that FCDJFS applied the amended statute prospectively in this case. Plaintiff argues the statute's amendment applies prospectively only, and its retroactive application violates Section 28, Article II of the Ohio Constitution.
 {¶ 15} Section 28, Article II of the Ohio Constitution prohibits the General Assembly from passing retroactive laws and protects vested rights from new legislative encroachments. Smith v. Smith,109 Ohio St.3d 285, 2006-Ohio-2419, at ¶ 6, citing Vogel v. Wells (1991),57 Ohio St.3d 91, 99. "The retroactivity clause nullifies those new laws that `reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time [the statute becomes effective].'"Bielat v. Bielat (2000), 87 Ohio St.3d 350, 352-353, quoting Miller v.Hixson (1901), 64 Ohio St. 39, 51. Any prohibition against retroactive laws pertaining to legislative enactments applies to rules and regulations that administrative agencies promulgate. See Martin v. OhioDept. of Human Serv. (1998), 130 Ohio App.3d 512 (addressing retroactivity of regulation regarding Medicaid eligibility); Murphy v.Ohio Dept. of Highway Safety (1984), 18 Ohio App.3d 99 (subjecting an agency's regulation to retroactivity analysis); Fraternal Order ofPolice v. Hunter (1975), 49 Ohio App.2d 185 (finding rule that administrative agency promulgated was subject to prohibitions against retroactive laws). *Page 9 
 {¶ 16} In determining whether a statute is impermissibly retroactive under Section 28, Article II, we employ a two-part test, involving both statutory and constitutional analyses. State v. Walls,96 Ohio St.3d 437, 2002-Ohio-5059, at ¶ 10; Smith, supra. Because R.C. 1.48
establishes a presumption that statutes operate prospectively only, "[t]he issue of whether a statute may constitutionally be applied retrospectively does not arise unless there has been a prior determination that the General Assembly specified that the statute so apply." Van Fossen v. Babcock Wilcox (1988), 36 Ohio St.3d 100, paragraph one of the syllabus. If there is no "`clear indication of retroactive application, then the statute may only apply to cases which arise subsequent to its enactment.'" (Emphasis sic.) Id. at 106, quotingKiser v. Coleman (1986), 28 Ohio St.3d 259, 262. Nonetheless, if we find a "clearly expressed legislative intent" that a statute is to apply retroactively, we proceed to the second step, which analyzes whether the challenged statute is remedial or substantive. State v. Cook (1998),83 Ohio St.3d 404, 410; Smith, supra; Bielat, supra, at 353.
 {¶ 17} Plaintiff contends R.C. 5104.09 operates prospectively only. She argues that when the legislature amended R.C. 5104.09 effective May 18, 2005 to prohibit felons convicted of forgery and other disqualifying offenses from operating type B day-care homes, it did not include language in the statute expressly stating the prohibition is to be applied "retroactively" or "retrospectively." Plaintiff asserts that absent such express language in the statute, this court must presume the legislature intended R.C. 5104.09's amendment to apply prospectively only. *Page 10 
 {¶ 18} In construing a statute, a court's paramount concern is the legislative intent. Proctor v. Kardassilaris, 115 Ohio St.3d 71,2007-Ohio-4838, at ¶ 12. In determining the legislative intent, we first look to the language in the statute and the purpose to be accomplished.State ex rel. Herman v. Klopfleisch (1995), 72 Ohio St.3d 581, 584, citing State v. S.R. (1992), 63 Ohio St.3d 590, 594-595. If the meaning of a statute is clear on its face, then it must be applied as written.Lake Hosp. Sys., Inc. v. Ohio Ins. Guar Assn. (1994), 69 Ohio St.3d 521,524-525.
 {¶ 19} Effective May 18, 2005, R.C. 5104.09 provides in pertinent part that "[n]o individual who has been convicted of or pleaded guiltyto a violation of section * * * 2913.31 [forgery] * * * shall own or operate a * * * type B family day-care home, or certified type B family day-care home." (Emphasis added.) R.C. 5104.09(A)(1)(b). In examining this language, we find a clearly expressed legislative intent that the amended statute is to apply retroactively. The legislative intent is evidenced by unequivocal statutory language that the prohibition against owning or operating a type B family day-care home applies to any individual who "has been convicted of or pleaded guilty to" a violation of R.C. 2913.31 [forgery], or other disqualifying offense listed in R.C.5104.09(A)(1)(b). (Emphasis added.) The emphasized language clearly refers to convictions or guilty pleas that occurred prior to the date the statutory amendment became effective. Therefore, the amended statute applies retroactively to convictions or guilty pleas for disqualifying offenses, including forgery, that occurred prior to May 18, 2005. *Page 11 
 {¶ 20} Our determination accords with decisions of other courts in Ohio that have similarly concluded such language reflects a legislative intent that a statute is to have retroactive application. SeeCook, supra, at 410 (finding a clearly expressed legislative intent that sex offender registration and verification requirements in R.C.2950.04[A] have retrospective application where language in the statute makes it applicable to an offender "who has been convicted of or pleaded guilty to" a sexually oriented offense); In re Hensley,154 Ohio App.3d 210, 2003-Ohio-4619, at ¶ 24 (determining that statutory language "has been convicted of" is language that expresses a legislative intent that a law is retroactive in application).
 {¶ 21} Here, plaintiff is an individual "who has been convicted of or pleaded guilty to" forgery prior to May 18, 2005, the effective date of R.C. 5104.09's amendment. The administrative hearing officer correctly found the statutory amendment applies retroactively to plaintiff, in accordance with the legislature's intent. In reviewing the agency decision, however, the common pleas court found the agency applied R.C.5104.09's amendment "prospectively" in revoking plaintiff's type B day-care certification. Based upon its determination that FCDJFS applied the challenged amendment prospectively in this case, the common pleas court concluded "there is [no] Constitutional question of retroactivity under Section 28, Article II, Ohio Constitution."
 {¶ 22} Because R.C. 5104.09, as amended effective May 18, 2005, applies retroactively, the trial court erred in determining it operates prospectively only. Notwithstanding the common pleas court's error, plaintiff is prejudiced only if FCDJFS' *Page 12 
retroactive application of the amended statute is not in accordance with law because it is unconstitutionally retroactive under Section 28, Article II of the Ohio Constitution. To resolve that question, this court must proceed to the second step of the analysis and determine whether R.C. 5104.09's May 18, 2005 amendment is substantive or remedial. Cook; Smith, Bielat, supra.
 {¶ 23} A purely remedial statute does not violate Section 28, ArticleII of the Ohio Constitution, even if applied retroactively.Cook, at 411. "[R]emedial laws are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right." Id. Laws that relate to procedure, including courses of procedure and methods of review, are ordinarily remedial in nature. Van Fossen, supra, at 107-108. A statute is substantive, and thereforeunconstitutionally retroactive under Section 28, Article II of the Ohio Constitution, if it "`impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction.'" Smith, supra, quoting Bielat, at 354; see, also, Van Fossen, supra, at 106.
 {¶ 24} Statutes enjoy a strong presumption of constitutionality, and a party seeking to have a statute declared unconstitutional must prove its unconstitutionality beyond a reasonable doubt. In re Brayden James,113 Ohio St.3d 420, 2007-Ohio-2335, at ¶ 13; State v. Anderson (1991),57 Ohio St.3d 168, 171. An appellate court's review of the constitutionality of a statute is de novo. See Cook, supra. *Page 13 
 {¶ 25} Plaintiff contends the May 18, 2005 amendment to R.C. 5104.09
is unconstitutionally retroactive under Section 28, Article II of the Ohio Constitution because it impairs her vested substantive right as a "veteran provider" to operate a type B day-care home. A "vested right" is a right that "so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent."Harden v. Ohio Atty. Gen., 101 Ohio St.3d 137, 2004-Ohio-382, at ¶ 9, and In re Hensley, supra, at ¶ 27, quoting Black's Law Dictionary (7th Ed.1999) 1324. "A right is not regarded as vested in the constitutional sense unless it amounts to something more than a mere expectation or interest based upon an anticipated continuance of existing law." In re Emery (1978), 59 Ohio App.2d 7, 11. "[W]here no vested right has been created, `a later enactment will not burden or attach a new disability to a past transaction or consideration in the constitutional sense, unless the past transaction or consideration * * * created at least a reasonable expectation of finality.' State ex rel.Matz v. Brown (1988), 37 Ohio St.3d 279, 281 * * *." Cook, supra, at 412. "Except with regard to constitutional protections against ex post facto laws * * * felons have no reasonable right to expect that their conduct will never thereafter be made the subject of legislation."Matz, at 281-282; Cook, at 412.
 {¶ 26} Here, contrary to plaintiff's contention, she acquired no "vested right" to own or operate a type B family day-care home, either when she was initially certified in 1995 or any time after FCDJFS renewed her certification. Pursuant to R.C. 119.01(B), a "type B family day-care" certificate is a "license." A "license" is "any license, permit, certificate, commission or charter issued by any agency." (Emphasis added.) R.C. 119.01(B). *Page 14 
FCDJFS is an "agency" for purposes of R.C. 119.01(B). See R.C.119.01(A)(2). A "license" does not ordinarily confer an absolute or vested right. See, e.g., Shady Acres Nursing Home, Inc. v. Canary
(1973), 39 Ohio App.2d 47, 50 (determining a license neither constitutes property in a constitutional sense nor confers an absolute right, and a governmental authority can impose new burdens, create additional burdens, or revoke the license); Raven-Hocking Coal Corp. v. Mamone
(June 11, 1986), Vinton App. No. 419 (concluding a license does not confer a vested, permanent or absolute right, but only a personal privilege to be exercised under existing restrictions and such restrictions as may thereafter be reasonably imposed).
 {¶ 27} Here, plaintiff's right to be certified as a type B day-care provider was not absolute; it was revocable. Specifically, from the date FCDJFS initially certified plaintiff as a type B family day-care provider until the agency revoked her type B certification, plaintiff's certification was expressly subject to FCDJFS's revocation, and the agency was prohibited from renewing her type B certification if she did not comply with the child care laws in Chapter 5104 and the rules adopted under the chapter. See R.C. 5104.11(C), the predecessor section to R.C. 5104.11(B). See, also, Ohio Adm. Code 5101:2-14-06(B) and (C) (authorizing the agency to revoke the certificate of a type B provider who is not in compliance with R.C. Chapter 5104 and Ohio Adm. Code 5101:2-14); Ohio Adm. Code 5101:2-14-11(B) (prohibiting the agency from certifying or continuing to certify any individual as a type B home provider who has been convicted of or pleaded guilty to an offense listed in R.C. 5104.013 or 5104.09). *Page 15 
 {¶ 28} Based on the foregoing, we conclude that certification to own and operate a type B day-care home is not a vested or substantive right in the constitutional sense for the purposes of retroactivity analysis of a statute. Because a substantive right is not affected, retroactive application of R.C. 5104.09, as amended effective May 18, 2005, does not offend Section 28, Article II of the Ohio Constitution. Although the common pleas court erroneously found the challenged amendment operates prospectively only, the error was harmless: plaintiff was not prejudiced when FCDJFS applied R.C. 5104.09 retroactively in this case, as its retroactive application was in accordance with the law. Accordingly, the first assignment of error is overruled.
II. Second Assignment of Error {¶ 29} Plaintiff's second assignment of error contends FCDJFS was precluded by the doctrines of waiver, estoppel, and laches from revoking her type B certificate in May 2006 after it renewed her certification as a type B day-care provider for a one-year period commencing December 1, 2005, several months after R.C. 5104.09 was amended to prohibit felony forgery offenders from providing type B child care services.
 {¶ 30} The principles of waiver, laches and estoppel ordinarily do not apply against the state or its agencies. See Gold Coast Realty, Inc. v.Cleveland Bd. of Zoning Appeals (1971), 26 Ohio St.2d 37, 39, andCampbell v. Campbell (1993), 87 Ohio App.3d 48, 50. Specifically, estoppel does not apply against a state or its agencies in the exercise of a governmental function. Hortmann v. Miamisburg, 110 Ohio St.3d 194,2006-Ohio-4251, at *Page 16 
¶ 25; Ohio State Bd. of Pharmacy v. Frantz (1990), 51 Ohio St.3d 143;Griffith v. J.C. Penney Co., Inc. (1986), 24 Ohio St.3d 112, 113. The operation of a job and family services department is a governmental function. See R.C. 2744.01 (C)(2)(m). FCDJFS was performing a governmental function when it revoked plaintiff's certification to own or operate a type B family day-care home. See R.C. 5104.11(B) (authorizing agency to revoke a "type B" certification before the 12-month certification period expires if the agency determines revocation is necessary). See, also, R.C. 5104.011(G)(2)(g) (authorizing the agency to adopt rules that include procedures for "issuing, renewing, denying, refusing to renew, or revoking certification").
(Emphasis added.) Plaintiff's argument that FCDJFS was barred by estoppel from revoking her "type B" certification, a statutorily authorized governmental function, is without merit.
 {¶ 31} Similarly without merit are plaintiff's arguments regarding laches and waiver. Laches is not imputable to the government.Frantz, supra, at 146; Lee v. Sturges (1889), 46 Ohio St. 153, 176. Moreover, "[t]he public interest may not be waived." Campbell, supra, at 50. In this case, approximately five months elapsed from the time FCDJFS entered into a contract with plaintiff in November 2005 to renew her type B family day-care certificate until the agency proposed the revocation of her certificate. The lapse of time was not unreasonable, and plaintiff did not show any material prejudice resulting from the agency's decision to revoke her type B certificate five months after it lawfully could have refused to renew it in the first place, due to her disqualifying forgery offenses. See discussion infra; R.C.5104.013(D)(2)(a) and 5104.09(A)(1)(b); R.C. 5104.11(B). *Page 17 
See, also, R.C. 5104.31 and 5104.32. Connin v. Bailey (1984),15 Ohio St.3d 34, 35-36, and Ohio Hosp. Assn. v. Ohio Bur. of Workers'Comp., Franklin App. 06AP-471, 2007-Ohio-1499, at ¶ 6 (noting a party asserting laches must show an adverse party's failure to assert a right for an unreasonable and unexplained length of time materially prejudiced the party).
 {¶ 32} FCDJFS was not barred by estoppel, laches, or waiver from revoking plaintiff's type B family day-care certification in May 2006 after it had renewed her certification for a one-year period effective December 2005. Accordingly, the second assignment of error is overruled.
III. Third Assignment of Error {¶ 33} In her third assignment of error, plaintiff challenges the validity of the administrative rule that sets forth the standards by which past felony offenders who are disqualified pursuant to R.C.5104.09(A)(1)(b) may satisfy the statutory exception set forth in R.C.5104.09(D) and be allowed to operate a type B family day-care home.
 {¶ 34} Specifically, R.C. 5104.09 prohibits offenders who have been convicted of or pleaded guilty to certain felony offenses, including forgery, from owning or operating a type B family day-care home, "[e]xcept as provided in rules adopted pursuant to division (D)" of the statute. R.C. 5104.09(A)(1)(b). Division (D) authorizes the director of job and family services to adopt rules specifying such exceptions "for persons who have been convicted of an offense listed in [the statute] but meet rehabilitation standards set by the *Page 18 department." (Emphasis added.) R.C. 5104.09(D). The rules adopted under R.C. 5104.09(D) are set forth in Ohio Adm. Code 5101:2-14-11.
 {¶ 35} Paragraph (N) of Ohio Adm. Code 5101:2-14-11 allows an individual convicted of an otherwise disqualifying misdemeanor offense to be certified as a type B day-care provider if (1) the offense has been sealed or at least five years have elapsed since the individual was discharged from prison, probation or parole for the offense, (2) the offense did not involve a vulnerable victim as specified in the rule, and (3) the individual applying for type B certification will not jeopardize the health, safety, or welfare of children cared for in a type B day-care home as measured by 12 factors, including "the individual's efforts at rehabilitation and the results of those efforts." Ohio Adm. Code 5101:2-14-11(N). The individual applying for type B certification has the burden to prove that the conditions specified in paragraph (N) are met, with any doubt to be "resolved in favor of protecting children." Ohio Adm. Code 5101:2-14-11(O).
 {¶ 36} Paragraph (Q) of the rule sets forth the corresponding standards for felony offenders, permitting a past felony offender to be certified as a type B family day-care provider only if the offender has been granted an unconditional pardon for the felony offense or the conviction or guilty plea has been set aside pursuant to law. Ohio Adm. Code 5101:2-14-11(Q). Plaintiff asserts paragraph (Q)'s rule is invalid because it is unreasonable and conflicts with R.C. 5104.09(D). According to plaintiff, "R.C. 5104.09(D) requires the director to implement rules that allow felons who have been meet [sic] rehabilitation standards to run Type B Family Day Care Centers." (Emphasis added.) *Page 19 
 {¶ 37} Administrative rules issued pursuant to statutory authority are valid and enforceable unless they are unreasonable or in clear conflict with legislation governing the subject matter. Hoffman v. State Med.Bd., 113 Ohio St.3d 376, 2007-Ohio-2201, at ¶ 17; State ex rel.Celebreeze v. Natl. Lime Stone Co. (1994), 68 Ohio St.3d 377, 382, citing Youngstown Sheet Tube Co. v. Lindley (1988), 38 Ohio St.3d 232,234. "`When the potential for conflict arises, the proper subject for determination is whether the rule contravenes an express provision of the statute.'" Brindle v. State Med. Bd. of Ohio, 168 Ohio App.3d 485,2006-Ohio-4364, at ¶ 30, quoting Woodbridge Partners Group, Inc. v. OhioLottery Comm. (1994), 99 Ohio App.3d 269, 273.
 {¶ 38} "When interpreting statutes, courts must give due deference to those interpretations by an agency that has accumulated substantial expertise and to which the General Assembly has delegated enforcement responsibility." Shell v. Ohio Veterinary Med. Licensing Bd.,105 Ohio St.3d 420, 2005-Ohio-2423, at ¶ 34. See, also Northwestern Ohio Bldg. Constr. Trades Council v. Conrad (2001), 92 Ohio St.3d 282, 289
(recognizing that courts must accord due deference to the interpretation formulated by an administrative agency that has accumulated substantial expertise and "to which the General Assembly has delegated the responsibility of implementing the legislative command"). If a statute provides an administrative agency authority to perform a specified act but does not provide the details by which the act should be performed, the agency is to perform the act in a reasonable manner based upon a reasonable construction of the statutory scheme. Id. at 287-288. See, also, Regions Hosp. v. Shalala (1998), *Page 20 522 U.S. 448, 449-450, and Chevron U.S.A., Inc. v. Natural Resources DefenseCouncil, Inc. (1984), 467 U.S. 837, 843 (observing that if the statute is silent or ambiguous as to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute). "An agency's reading that fills a gap or defines a term in a reasonable way in light of the Legislature's design controls, even if it is not the answer the court would have reached in the first instance." Regions Hosp., at 450, citing Chevron, at 843, fn. 11.
 {¶ 39} In R.C. Chapter 5104, the General Assembly enacted child care laws granting the director of job and family services broad and comprehensive rule-making authority to promulgate rules that provide for, and have the overriding purpose of, safeguarding the health, safety and welfare of children receiving child care, particularly children in type B family day-care homes that receive public funds for providing child care. See, generally, R.C. 5104.011, 5104.11, 5104.013, and5104.30 et seq. Toward that end, the legislation grants the agency broad powers to promulgate procedures for issuing, renewing, denying and revoking certification for type B day-care providers, and it grants extensive oversight authority to the agency regarding type B family day-care homes and providers. See R.C. 5104.011, 5104.11 and 5104.30 et seq. The legislation specifically empowers the agency to adopt procedures to deal with fraud or abuse that providers of publicly funded day-care commit. R.C. 5104.38(G).
 {¶ 40} Contrary to plaintiff's assertion, R.C. 5104.09(D) does not mandate that the director of job and family services adopt rules that allow "felons" to be certified as type B *Page 21 
day-care providers if they meet rehabilitation standards set by the department. Rather, R.C. 5104.09(D) merely requires the director to adopt rules specifying exceptions for individuals who have committed "an offense" listed in the statute; the statute lists misdemeanor offenses as well as felony offenses. Given R.C. 5104.09(D)'s vague terms and the broad discretion the legislature has accorded to the department of job and family services to interpret and implement child care legislation generally and R.C. 5104.09 specifically, we cannot say the agency's rule is in clear conflict with the General Assembly's intent in enacting R.C.5104.09.
 {¶ 41} Additionally, in light of the overriding purpose of the child care legislation to safeguard the health, safety and welfare of children receiving child care, and the governmental interest in preventing fraud in publicly funded day-care operations, we cannot say the administrative rule at issue is unreasonable, where plaintiff, a past felony offender convicted of forgery, is prevented from owning or operating a publicly funded day-care home. Plaintiff's third assignment of error accordingly is overruled.
 {¶ 42} Having overruled each of plaintiff's assignments of error, we affirm the judgment of the common pleas court that affirmed the order of FCDJFS revoking plaintiff's certification to own or operate a type B family day-care home.
Judgment affirmed.
BROWN, J., concurs.
 TYACK, J., dissents. *Page 22