[Cite as *Silver Lining Group EIC Morrow Cty. v. Ohio Dept. Edn. Autism Scholarship Program*, 2017-Ohio-7834.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Silver Lining Group EIC Morrow County et al., | : | |
| | : | |
| Plaintiffs-Appellants, | | No. 16AP-398 |
| | : | (C.P.C. No. 14CV-12280) |
| v. | | |
| | : | (REGULAR CALENDAR) |
| Ohio Department of Education Autism Scholarship Program, | : | |
| | | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on September 26, 2017

**On brief:** *Kemp, Schaeffer & Rowe Co., L.P.A.*, and *Erica Ann Probst*, for appellants. **Argued:** *Erica Ann Probst*.

**On brief:** *Michael DeWine*, Attorney General, *Jeffrey A. Knight*, and *Marissa J. Palumbo*, for appellee. **Argued:** *Marissa J. Palumbo*.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Plaintiffs-appellants, Silver Lining Group EIC: Morrow County ("SLG") and Behavioral Intervention Institute of Ohio ("BIIO"), appeal from a judgment of the Franklin County Court of Common Pleas granting the Civ.R. 56 motion for summary judgment of defendant-appellee, Ohio Department of Education ("ODE"), Autism Scholarship Program ("ASP"). Because: (1) the trial court did not err in its analysis of R.C. 3310.41, and (2) appellants failed to establish a claim for unjust enrichment, we affirm.

{¶ 2} On November 24, 2014, appellants filed a complaint against ODE asserting a claim for collection on a past due account. The events giving rise to the complaint occurred during the 2013-2014 school year.

{¶ 3} Appellants are limited liability companies that provide "behavioral interventional services" for individuals with autism and similar diagnoses, using a method known as "applied behavioral analysis." (Wilcock Depo. at 15.) Appellants receive payment for their services from "private pay," "private insurance," contracts with school districts "for out-of-district placements," and contracts with "county Boards of Developmental Disabilities." (Wilcock Depo. at 18-19.) However, the ASP is one of appellants' "primary funding streams." (Wilcock Depo. at 18.)

{¶ 4} The ASP is "a school choice option that allows parents to access public funding" to have their child's individualized education plan ("IEP") implemented "by registered private providers or alternative public providers." (Huckins Depo. at 10.) Thus, the ASP provides children diagnosed with autism "an option instead of attending the public schools." (Murphy Depo. at 18-19.)

{¶ 5} In 2007, SLG opened a facility in Mansfield, Ohio. ODE approved SLG's application to become a registered private provider, thereby permitting SLG to render services and receive payment under the ASP. In 2009, BIIO opened a facility in Westlake, Ohio, and ODE approved BIIO's application to become a registered private provider. In 2012, BIIO opened a second facility in Columbus, Ohio. In 2013, SLG opened a second facility in St. Clairsville, Ohio. Kristen Wilcock and Michele Murphy are co-owners of SLG and BIIO. Wilcock is the chief executive officer of the companies, and Murphy is the executive director.

{¶ 6} ODE administers the ASP through the non-public education options office within the center for student options at ODE. Sue Cosmo is the director of the non-public education options office, and Lisa Huckins is an education program specialist in the office.

{¶ 7} On January 4, 2013, Huckins sent an e-mail to all registered private providers, stating that ODE was aware that "many of our providers have multiple locations that are not currently reflected in the online system." Huckins informed the providers that "[t]his year, you will need to create new applications for each of your

additional locations. We need to be able to properly account for the providers in the program and display your information to prospective parents in these areas of the state." Huckins instructed the providers "with multiple locations" to "please contact [ODE] for directions" if they had "questions about this process." (Murphy Depo. at exhibit No. 1.)

{¶ 8}   After receiving the January 4, 2013 e-mail, appellants reviewed the statutes, code provisions, and guidelines governing the ASP, and determined that there was "no change in the OAC code or in the rules." (Murphy Depo. at 30.) Wilcock responded to Huckins' e-mail, asking Huckins "to explain why she was making this change and where it was in the rule" that each facility had to register separately. Huckins did not provide Wilcock "with an answer." (Wilcock Depo. at 40.) Appellants decided that, because their companies were "approved as * * * provider[s]," there was no need to separately register their new SLG and BIIO locations. (Murphy Depo. at 32.) Wilcock explained that she did not submit applications for her companies' new locations because completing the applications was "a ton of administrative work," and she found "no reason to do it." (Wilcock Depo. at 79-80.)

{¶ 9}   At the time of the events at issue, student applications to participate in the ASP would list the name of "the provider" the student wanted to attend, "but not the location" of the provider. (Huckins Depo. at 43.) Prior to moving to the online system during the 2012-2013 school year, an ODE employee would review the student applications to ensure that the listed "provider was properly registered." (Huckins Depo. at 36.)  After moving to the online system, providers would file student applications with ODE and, based on the information in the application listing the student's "address and home school district," the application would be "routed to the specific school district for review." (Murphy Depo. at 36; Huckins Depo. at 24.) However, district staff members were not obligated to determine whether the provider "listed by the potential applicant is a registered private provider." (Huckins Depo. at 38.)

{¶ 10} When a registered private provider submitted an invoice to ODE for payment through the online system, the system would automatically approve the invoice and issue payment. An ODE employee would only review the invoice if there was a "question or problem or an issue." (Huckins Depo. at 27.) Huckins explained that the computer "system only allow[ed] registered providers to submit [a student] application,"

so a registered provider was "the only provider that technically should be able to submit an application to the system." (Huckins Depo. at 38.) Huckins admitted that an ASP student could potentially attend an unregistered provider if the student was "listed with an approved location and not the location they were actually attending." (Huckins Depo. at 42.)

{¶ 11} Murphy admitted that she submitted all SLG invoices "[t]hrough Mansfield" and all BIIO invoices "through Westlake." (Murphy Depo. at 50.) Thus, while students were attending SLG in St. Clairsville and BIIO in Columbus, appellants submitted the student applications and invoices for those students "through Mansfield and Westlake." (Murphy Depo. at 24.)

{¶ 12} On March 8, 2013, Huckins sent another e-mail to all registered private providers reminding the providers that, if they were serving "children at multiple locations, [the provider] should renew [their] original location first. Then, using the New Provider Application option, create new listings for [their] additional locations." Huckins explained that "each location should be listed under its own physical address." (Wilcock Depo. at exhibit No. 2.) On March 11, 2013, appellants started an application for their Columbus location to become a registered private provider, but did not submit the application to ODE.

{¶ 13} On June 12, 2013 Huckins sent an e-mail to appellants, noting that they had "an autism scholarship provider application in STARTED status." (Emphasis sic.) Huckins informed appellants that, in order for their "application to be reviewed and possibly approved for the 2013-2014 program year, it will need to be SUBMITTED." (Emphasis sic.) (Murphy Depo. at exhibit No. 4.) Appellants did not submit their application.

{¶ 14} When the 2013-2014 school year began in August 2013, appellants had students attending both their Columbus and St. Clairsville locations. On September 4, 2013, Huckins sent an e-mail to Murphy stating that she had "received a call from a district with questions about an application. They indicated that the student was attending Silver Lining in St. Clairsville. I was not aware of a location in St. Clairsville. Is this facility affiliated with yours?" Murphy responded stating, "[y]es, we are serving

clients in the St. Clairsville area." Huckins replied, "[i]f you are opening a new site, you need to register the new location as a provider." (Murphy Depo. at exhibit No. 2.)

{¶ 15} Wilcock responded to Huckins, stating that she would be "happy to register the new site if [Huckins] could please provide [her] with some additional information. Can you please direct me to the rule or the section of the OAC that references this." Huckins replied that ODE would be "unable to verify the St. Clairsville location's compliance with any of the requirements in OAC 3301-103-06 if we do not know the site exists. We are obligated to ensure that sites serving students in the program are compliant." (Murphy Depo. at exhibit No. 2.) Appellants started an application for St. Clairsville on September 9, 2013, but did not submit the application to ODE.

{¶ 16} On September 30, 2013, Huckins sent an e-mail to Wilcock noting that the applications for both Columbus and St. Clairsville remained "in started status." Huckins asked Wilcock to "[p]lease submit them so [Huckins could] review them as soon as possible." Huckins informed Wilcock, "[i]f we cannot get them registered, I will need to hold payment for the students attending those locations." (Murphy Depo. at exhibit No. 4.)

{¶ 17} On October 7, 2013, Huckins sent an e-mail to Wilcock, noting Huckins' January 4, March 8, June 12, and September 4, 2013 e-mails informing Wilcock of the need to submit applications for the new SLG and BIIO locations. Huckins stated that ODE records demonstrated that appellants had "13 Columbus area students listed as being served by the approved Westlake location of The Behavioral Intervention Institute. You also have 4 Martin's Ferry area students listed as being served by the Mansfield location of Silver Lining." Huckins informed Wilcock that "[u]ntil their local locations have been registered an approved site to provide services, I am holding payments for these students." (Cosmo Depo. at exhibit D.) Thus, "at this point," ODE began "to withhold payments for the first time." (Wilcock Depo. at 64-65.)

{¶ 18} On October 8, 2013, appellants submitted their application for St. Clairsville to become a registered private provider. On October 11, 2013, appellants submitted their application for Columbus to become a registered private provider.

{¶ 19} Huckins reviewed the applications and placed the applications into correction needed status several times over the following months. The issues requiring

correction involved staff members not having current criminal background checks, staff members with expired professional licenses, lack of insurance documents, and confusion regarding which staff members were working at which locations.

{¶ 20} On April 15, 2014, ODE approved SLG's St. Clairsville's application to become a registered private provider. ODE did not approve or deny BIIO's Columbus application during the 2013-2014 school year, as the application continued to be placed in correction needed status throughout the year. Following the 2013-2014 school year, all four of appellants' locations became registered private providers.

{¶ 21} Appellants' complaint asserted that ODE owed appellants $366,300.25 for the ASP services appellants provided at their Columbus and St. Clairsville locations during the 2013-2014 school year. Following a status conference, the parties agreed to submit briefs regarding the meaning of the term "private provider" in R.C. 3310.41. Appellants and ODE filed their respective briefs on August 31, 2015.

{¶ 22} ODE asserted that, as R.C. 3310.41 defined a registered private provider as a non-public entity approved by ODE to participate in the ASP, it was "clear that each entity being operated by [appellants] must be separately registered as a private provider." (ODE Aug. 31, 2015 Memo in Support at 4.) ODE noted that Ohio Adm.Code 3301-103-06 obligated providers to demonstrate to ODE that the provider satisfied all applicable health and safety codes. ODE argued that such a provision could not "be enforced if providers are allowed to open new locations without registering those locations with the program." (ODE Aug. 31, 2015 Memo in Support at 7.)

{¶ 23} Appellants asserted that, because their companies were entities, and the companies had been "approved as a private provider for at least one location, all of its locations are approved." (Appellants' Aug. 31, 2015 Brief in Support at 2.) Appellants alleged that neither R.C. 3310.41 nor Ohio Adm.Code 3301-103-06 contain a requirement stating that "each location owned by an entity must be approved," and that accordingly "a license for each facility [was] neither necessary nor required." (Appellants' Aug. 31, 2015 Brief in Support at 1, 6.)

{¶ 24} On October 2, 2015, the trial court issued a decision finding ODE's interpretation of "private provider" in R.C. 3310.41 "to be reasonable and not contrary to law." (Oct. 2, 2015 Decision & Entry at 4.)  The court concluded that "R.C. §3310.41 [was]

ambiguous as to the meaning of 'private provider,' " noting that, "[a]lthough the term could be interpreted to allow multiple locations under one entity, [ODE's] interpretation of one location per entity [was] reasonable, in light of additional provisions under the associated law." (Oct. 2, 2015 Decision & Entry at 3-4.) Specifically, the court noted that ODE could not assess whether a provider met all applicable health and safety codes under Ohio Adm.Code 3301-103-06(A)(8) unless ODE had "each and every location registered and on file." (Oct. 2, 2015 Decision & Entry at 4.)

{¶ 25} On October 15, 2015, appellants filed a motion for leave to amend their complaint, which the trial court granted. In the amended complaint, appellants reiterated their claim for collection on a past due account and added a claim for unjust enrichment. Appellants asserted that ODE was unjustly enriched by appellants' ASP services during the 2013-2014 school year, because appellants' services allowed ODE to "deduct the aggregate amounts of the awarded scholarship which would otherwise have been owed and paid to the school district in which the serviced student resided." (First Amended Complaint at ¶ 13.) Appellants attached exhibit A to the amended complaint, which listed the monthly amount per student appellants alleged ODE owed them.

{¶ 26} On May 2, 2016, ODE filed a motion for summary judgment. ODE argued that the unregistered status of appellants' Columbus and St. Clairsville locations during the 2013-2014 school year precluded those locations "from providing services to children under the Scholarship program." (ODE May 2, 2016 Mot. for Summ. Jgmt. at 8.) As such, ODE argued that there was "no provable sum and certainly no obligation for the Department to pay for services allegedly provided" at the Columbus or St. Clairsville locations. (ODE May 2, 2016 Mot. for Summ. Jgmt. at 11.) Regarding appellants' unjust enrichment claim, ODE argued that "[a]ny alleged benefit was conferred upon students, not the Department," and that "[a]ny benefit in the direction of the Department [was] necessarily blunted by Plaintiffs' failure to follow Scholarship requirements." (ODE May 2, 2016 Mot. for Summ. Jgmt. at 12-13.)

{¶ 27} On May 3, 2016, appellants filed their motion for summary judgment. Appellants asserted that "the contract or agreement" between the parties, which formed the basis of the account, was "founded on statute and administrative code, specifically R.C. §3310.41 and O.A.C. 3301-103-06." (Appellants' May 3, 2016 Mot. for Summ. Jgmt.

at 16.) Appellants argued that, because "SLG and BIIO were approved as entities for the" 2013-2014 school year, and "there was no statutory or administrative basis which changed the promise for payment," appellants had "established an action on account." (Appellants' May 3, 2016 Mot. for Summ. Jgmt. at 17.) Regarding unjust enrichment, appellants argued that they conferred a benefit on ODE by relieving "the school districts to which each student belonged from having to provide ASP services for each student's IEP," which relieved ODE from "having to pay a certain amount of money for each of the twenty-four (24) students to districts to which they belonged." (Appellants' May 3, 2016 Mot. for Summ. Jgmt. at 18.)

{¶ 28} On May 23, 2016, the trial court issued a decision and entry granting ODE's motion for summary judgment and denying appellants' motion for summary judgment. The court concluded that, as the Columbus and St. Clairsville locations were not registered under R.C. 3310.41 during the 2013-2014 school year, they "could not have had accounts with the State for" payment under the ASP. (May 23, 2016 Decision & Entry at 3.) Regarding unjust enrichment, the court acknowledged appellants' argument that ODE benefited from appellants "educating students who otherwise would have attended public schools paid for by the State," but concluded that the benefit conferred by appellants "would be to the parents of the children who attended SLG—St. Clairsville and BIIO—Columbus, not the schools themselves." (May 23, 2016 Decision & Entry at 4.)

{¶ 29} Appellants appeal, assigning the following errors for our review:

> I. The Trial Court Determination that R.C. 3310.41's definition of "Private Provider" as an "entity" actually means "location" is Contrary To Law and the Administrative Practice of the Department of Education for the Prior Six Years.

> II. The Trial Court's Determination that the State of Ohio Department of Education Has Not Been Unjustly Enriched is Contrary to Fact and Contrary to Law.

{¶ 30} Summary judgment is appropriate when the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the non-moving party, and that conclusion is adverse to the non-moving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio

St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Hudson* at ¶ 29. This means an appellate court conducts an independent review, without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, LLC*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.)

{¶ 31} When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the non-moving party has no evidence to prove its case. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the non-moving party has no evidence to support its claims. *Id.* If the moving party meets its burden, then the non-moving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293. If the non-moving party does not so respond, summary judgment, if appropriate, shall be entered against the non-moving party. *Id.*

{¶ 32} Appellants' first assignment of error asserts the trial court's interpretation of R.C. 3310.41 was contrary to law and ODE's prior administrative practices.

{¶ 33} Statutory interpretation is a question of law subject to de novo appellate review. *State v. Banks*, 10th Dist. No. 11AP-69, 2011-Ohio-4252, ¶ 13, citing *State v. Certain*, 180 Ohio App.3d 457, 2009-Ohio-148, ¶ 11 (4th Dist.). When conducting such a review, an appellate court does not defer to the trial court's determination. *Akron v. Frazier*, 142 Ohio App.3d 718, 721 (9th Dist.2001), citing *State v. Sufronko*, 105 Ohio App.3d 504, 506 (4th Dist.1995).

{¶ 34} The primary goal of statutory interpretation is to give effect to the General Assembly's intent in enacting the statute. *Banks* at ¶ 13, citing *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, ¶ 11. To determine legislative intent, we first look to the language of the statute. *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, ¶ 11,

citing *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81 (1997). We consider the statutory language in context, construing words and phrases according to the rules of grammar and common usage. *Bartchy v. State Bd. of Edn.*, 120 Ohio St.3d 205, 2008-Ohio-4826, ¶ 16, citing *State ex rel. Stoll v. Logan Cty. Bd. of Elections*, 117 Ohio St.3d 76, 2008-Ohio-333, ¶ 34. If the words in a statute are " 'free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation.' " *Hairston* at ¶ 12, quoting *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus.

{¶ 35} "It is only where the words of a statute are ambiguous, uncertain in meaning, or conflicting that a court has the right to interpret a statute." *In re Adoption of Baby Boy Brooks*, 136 Ohio App.3d 824, 829 (10th Dist.2000). Ambiguity exists if the language of a statute is susceptible of more than one reasonable interpretation. *Columbus v. Mitchell*, 10th Dist. No. 16AP-322, 2016-Ohio-7873, ¶ 6. If a statute is ambiguous, R.C. 1.49 provides that a court may consider "other matters," such as the object sought to be attained, the legislative history, the consequence of a particular construction, and the administrative construction of the statute.

{¶ 36} R.C. 3310.41 establishes the ASP. The statute states that ODE "shall pay a scholarship to the parent of each qualified special education child upon application of that parent." R.C. 3310.41(B). The "purpose of the scholarship is to permit the parent of a qualified special education child the choice to send the child to a special education program, instead of the one operated by or for the school district in which the child is entitled to attend school." R.C. 3310.41(B).

{¶ 37} Each scholarship awarded under the ASP "shall be used only to pay tuition for the child on whose behalf the scholarship is awarded to attend a special education program that implements the child's [IEP] and that is operated by an alternative public provider or by a registered private provider." R.C. 3310.41(B). "A scholarship shall not be paid to a parent for payment of tuition owed to a nonpublic entity unless that entity is a registered private provider." R.C. 3310.41(D). The statute provides that ODE "shall adopt rules under Chapter 119. of the Revised Code prescribing procedures necessary to implement this section, including, but not limited to, procedures and deadlines for

parents to apply for scholarships, standards for registered private providers, and procedures for approval of entities as registered private providers." R.C. 3310.41(E).

{¶ 38} A "registered private provider" is defined as "a nonpublic school or other nonpublic entity that has been approved by the department of education to participate in the program established under this section." R.C. 3310.41(A)(8). Black's Law Dictionary defines an "entity" as "[a]n organization (such as a business or a governmental unit) that has a legal identity apart from its members or owners." *Black's Law Dictionary* 650 (10th Ed.2014).

{¶ 39} R.C. 3310.41 plainly expresses the legislature's intent to create a program to provide autistic children with an alternate education option outside of their public school. The statute provides ODE with comprehensive rule-making authority to promulgate rules to implement the ASP and, thus, expresses the legislature's intent to make ODE the agency with oversight over the ASP and the entities that participate in the program.

{¶ 40} The term "nonpublic entity" in R.C. 3310.41(A)(8) does not specify whether the entity could have multiple locations. A non-public organization with a legal identity apart from its members or owners could encompass a company with several locations, but the term could also mean an organization operating at one location. Accordingly, because the term is susceptible to more than one reasonable interpretation, it is ambiguous.

{¶ 41} Pursuant to its statutory authority to do so, ODE promulgated Ohio Adm.Code 3301-103 to prescribe the procedures to implement the ASP. "Administrative rules are designed to accomplish the ends sought by the legislation enacted by the General Assembly." *Hoffman v. State Med. Bd.*, 113 Ohio St.3d 376, 2007-Ohio-2201, ¶ 17. "[A]n administrative rule that is issued pursuant to statutory authority has the force of law unless it is unreasonable or conflicts with a statute covering the same subject matter." *State ex rel. Celebrezze v. Natl. Lime & Stone Co.*, 68 Ohio St.3d 377, 382 (1994).

{¶ 42} Ohio Adm.Code 3301-103-06(A) provides that "[n]o private provider shall receive scholarship payments from parents pursuant to the [ASP] until the private provider is registered with [ODE]." ODE "shall register" any provider that meets the requirements set forth in Ohio Adm.Code 3301-103-06(A).

{¶ 43} To participate in the ASP, an entity must file an application with ODE, and ODE must approve the application. Ohio Adm.Code 3301-103-06(A)(1). In the

application, the provider must include documentation demonstrating that the provider's employees have "appropriate credentials from the state board of education or appropriate credentials from a national or state board for their specific professions, and these credentials are related to the individualized education program (IEP) services they will be providing." Ohio Adm.Code 3301-103-06(A)(3). The provider must also demonstrate that it has current "background checks as if it were a school district for any staff licensed by [ODE]," and for all other staff the provider must have "on file, * * * a current criminal records check from the superintendent of the Ohio bureau of criminal identification and investigation." Ohio Adm.Code 3301-103-06(A)(5).

{¶ 44} The provider must demonstrate that it has "the capacity to provide services under the [ASP]," by filing "documentation that the private provider has adequate liability and property and casualty insurance." Ohio Adm.Code 3301-103-06(A)(7)(b). The provider must "meet[] all applicable state and local health and safety codes." Ohio Adm.Code 3301-103-06(A)(8). Additionally, after a provider is registered, the "registered private provider will participate in an on-site monitoring visit upon the request of [ODE]." Ohio Adm.Code 3301-103-06(C).

{¶ 45} Appellants assert that R.C. 3310.41 and Ohio Adm.Code 3301-103-06 are "clear in that a license for each facility is neither necessary nor required." (Appellants' brief at 44.) Relying on R.C. 3721.05 and 5104.03, appellants assert that "other statutes in the Revised Code are * * * unambiguous in requiring all facilities to be individually licensed." (Appellants' brief at 43.) R.C. 3721.05 provides that no person or corporation shall operate a nursing home "without obtaining a license from the director of health," and that "[a]ll licensed homes shall be open for inspection." R.C. 3721.05(A) and (D). R.C. 5104.03 provides that any person or agency "seeking to establish a child day-care center * * * shall apply for a license to the director of job and family services"[;] and that "[u]pon filing of the application for a license, the director shall investigate and inspect the center." R.C. 5104.03(B) and (C)(1).

{¶ 46} However, neither R.C. 3721.05 nor 5104.03 concern the ASP, and neither utilize the term entity. Accordingly, as these statutes do not concern the same subject matter as R.C. 3310.41, they may not be construed in pari materia. *See State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections*, 72 Ohio St.3d 289, 294 (1995) (noting that "statutes

relating to the same subject matter should be construed together," and that in "construing such statutes *in pari materia*, they should be harmonized so as to give full application to the statutes") (Emphasis sic.); *Sichman v. Kennaley*, 2d Dist. No. 9450 (Dec. 18, 1985) (observing that when statutes concern "totally different subject matter," the "two subjects may not be construed *in pari materia*"). Moreover, R.C. 3721.05 and 5104.03 demonstrate that nursing homes and daycare centers must obtain a license to operate, and must submit to an inspection from their respective governing agencies. Similarly, under R.C. 3310.41 and Ohio Adm.Code 3301-103-06, ODE must approve an entity to become a registered private provider, and each provider must submit to an on-site monitoring visit upon ODE's request.

{¶ 47} Appellants assert that this court has "no duty to give deference to [ODE's] interpretation of the relevant O.A.C. and Revised Code sections," because neither section states "that each facility operated by a registered private provider must be licensed." Appellants argue that adding such a requirement "is judicial modification in the guise of interpretation." (Appellants' brief at 45-46.) We disagree.

{¶ 48} " '[W]here an ambiguous statute is subject to an administrative history of interpretation, this court may defer to the administrative construction of the statute, unless the interpretation is clearly in error.' " *State ex rel. Taylor v. Indus. Comm.*, 10th Dist. No. 05AP-803, 2006-Ohio-4781, ¶ 10, quoting *In re Aultman Hosp.*, 80 Ohio App.3d 134, 139 (10th Dist.1992). "[C]ourts must give due deference to those interpretations by 'an agency that has accumulated substantial expertise and to which the General Assembly has delegated enforcement responsibility.' " *Shell v. Ohio Veterinary Med. Licensing Bd.*, 105 Ohio St.3d 420, 2005-Ohio-2423, ¶ 34, quoting *Weiss v. Pub. Util. Comm.*, 90 Ohio St.3d 15, 17-18 (2000). *See also State ex rel. Clark v. Great Lakes Constr. Co.*, 99 Ohio St.3d 320, 2003-Ohio-3802, ¶ 10; *Frisch's Restaurants, Inc. v. Ryan*, 121 Ohio St.3d 18, 2009-Ohio-2.

{¶ 49} "If a statute provides an administrative agency authority to perform a specified act but does not provide the details by which the act should be performed, the agency is to perform the act in a reasonable manner based upon a reasonable construction of the statutory scheme." *Cosby v. Franklin Cty. Dept. of Job & Family Servs.*, 10th Dist. No. 07AP-41, 2007-Ohio-6641, ¶ 38. " 'An agency's reading that fills a gap or defines a

term in a reasonable way in light of the Legislature's design controls, even if it is not the answer the court would have reached in the first instance.' " *Id.* at ¶ 38, quoting *Regions Hosp. v. Shalala*, 522 U.S. 448, 450 (1998).

{¶ 50} Thus, a "legislative gap" is not "equivalent to a lack of authority for the agency to act." *Northwestern Ohio Bldg. & Constr. Trades Council v. Conrad*, 92 Ohio St.3d 282, 289 (2001). Rather, " 'the power of an administrative agency to administer a * * * program *necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly,'* by the legislature." (Emphasis sic.) *Id.*, quoting *Morton v. Ruiz*, 415 U.S. 199, 231 (1974).

{¶ 51} As R.C. 3310.41(A)(8) 's definition of registered private provider does not specify whether the non-public entity must exist at one location, or whether the entity could have multiple locations, ODE reasonably filled that gap and defined the term as an entity existing at one location. The General Assembly delegated enforcement of the ASP to ODE, and specifically obligated ODE to create the standards and procedures an entity must comply with to become a registered private provider. ODE developed standards which were facility specific, including the requirements that the entity have adequate property insurance, meet applicable health and safety codes, and submit to an on-site monitoring visit on request. Accordingly, as the standards a registered private provider must comply with are specific to the provider's facility, ODE's conclusion that the term "nonpublic entity" in R.C. 3310.41(A)(8) meant the entity existing at one location was a reasonable construction of the statute. Because ODE's interpretation of R.C. 3310.41 was reasonable, we defer to it.

{¶ 52} Additionally, R.C. 3310.41(F) states that ODE must "provide reasonable notice to all * * * registered private providers of any amendment to a rule governing, or change in the administration of, the [ASP]." Thus, in enacting R.C. 3310.41, the General Assembly contemplated that ODE's administration of the ASP would change over time, and that such changes in administration would not always amount to a statutory amendment. Huckins' January 4, 2013 e-mail informing all providers of the need to separately register each of their locations for the upcoming 2013-2014 school year satisfied ODE's obligation under R.C. 3310.41(F), as it notified all providers of a change in the administration of the ASP.

{¶ 53} Appellants contend that they could "comply with the health code requirement" in Ohio Adm.Code 3301-103-06(A)(8) by uploading "multiple [health and safety] certificates for each location" under one application. (Appellants' brief at 52.) Whether appellants could satisfy the Ohio Adm.Code 3301-103-06(A) requirements for each of their locations through one application is irrelevant. Because ODE's interpretation of R.C. 3310.41(A)(8) was reasonable, we are bound to uphold it, even if it is not the interpretation this court would have reached in the first instance. *Cosby* at ¶ 38. *See also State ex rel. Bertaux v. State Teachers Retirement Sys. Bd.*, 10th Dist. No. 11AP-504, 2012-Ohio-5900, ¶ 9.

{¶ 54} Appellants contend the trial court failed to "analyze the waiver argument, considering that the ODE had actually paid for services at both the St. Clairsville and Columbus locations" at the beginning of the 2013-2014 school year "and stopped." (Appellants' brief at 57-58.) However, "principles of waiver, laches and estoppel ordinarily do not apply against the state or its agencies," and "estoppel does not apply against a state or its agencies in the exercise of a governmental function." *Cosby* at ¶ 30, citing *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, ¶ 25. *See also Sun Refining & Marketing Co. v. Brennan*, 31 Ohio St.3d 306, 307 (1987). ODE's payments to appellants during the beginning of the 2013-2014 school year could not waive the statutory provisions prohibiting ODE from paying ASP scholarship funds to unregistered entities. *See Gralewski v. Ohio Bur. of Workers' Comp.*, 167 Ohio App.3d 468, 2006-Ohio-1529, ¶ 49 (10th Dist.). Moreover, the record demonstrates appellants only received payments for the students attending their unapproved locations because appellants filed the invoices for those students through their approved locations at Mansfield and Westlake.

{¶ 55} Pursuant to our de novo review, we find no error in the trial court's interpretation of R.C. 3310.41. Based on the foregoing, appellants' first assignment of error is overruled.

{¶ 56} Appellants' second assignment of error asserts that the trial court erred in concluding that ODE had not been unjustly enriched.

{¶ 57} To prevail on a claim for unjust enrichment, a plaintiff must prove the following: (1) the plaintiff conferred a benefit on the defendant, (2) the defendant had knowledge of such benefit, and (3) the defendant retained the benefit under

circumstances in which it would be unjust for him to retain the benefit. *Nationwide Ins. Ent. v. Progressive Specialty Ins. Co.*, 10th Dist. No. 01AP-1223, 2002-Ohio-3070, ¶ 27, citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984). " 'It is not sufficient for the plaintiffs to show that [they have] conferred a benefit upon the [defendants]. [Plaintiffs] must go further and show that under the circumstances [they have] a superior equity so that as against [them] it would be unconscionable for the [defendants] to retain the benefit.' " *United States Health Practices v. Blake*, 10th Dist. No. 00AP-1002 (Mar. 22, 2001), quoting *Katz v. Banning*, 84 Ohio App.3d 543, 552 (10th Dist.1992).

{¶ 58} "A claim for unjust enrichment arises not from a true contract, but from a contract implied in law, or quasi contract," and accordingly the " 'doctrine of unjust enrichment provides an equitable remedy.' " *Grothaus v. Warner*, 10th Dist. No. 08AP-115, 2008-Ohio-6683, ¶ 8, quoting *Banks v. Nationwide Mut. Fire Ins. Co.*, 10th Dist. No. 99AP-1413 (Nov. 28, 2000). Restitution is the remedy provided " 'to prevent one from retaining property to which he is not justly entitled.' " *San Allen v. Buehrer*, 8th Dist. No. 99786, 2014-Ohio-2071, ¶ 114, quoting *Keco Industries, Inc. v. Cincinnati & Suburban Bell Tel. Co.*, 166 Ohio St. 254 265 (1957). *See also San Allen* at ¶ 123 (noting that "Ohio courts have long recognized that persons from whom funds have been unlawfully collected and retained by the state may be entitled to equitable restitution").

{¶ 59} Appellants assert that, because they provided "ASP services to twenty-[four] (24) Ohio students," they relieved "the school districts to which each student belonged from having to providing [sic] ASP services for each student's IEP." (Appellants' brief at 54-55.) Appellants contend the benefit they conferred on ODE was ODE's receipt of "a credit toward monies paid to that district, or rather, * * * allowing the ODE to be relieved of having to pay a certain amount of money for each of the twenty-four (24) students to districts to which they belonged." (Appellants' brief at 55.) The record does not support appellants' contention.

{¶ 60} R.C. 3310.41 states that "a child * * * for whom a scholarship is awarded under this section shall be counted in the" average daily membership formula set forth in R.C. 3317.03, "of the district in which the child is entitled to attend school." R.C. 3310.41(C)(1). Funding for the ASP occurs "[i]n each fiscal year," when ODE "deduct[s] from the amounts paid to each school district under Chapter 3317 of the Revised Code

* * * the aggregate amount of scholarships awarded under this section for qualified special education children included in the formula ADM." R.C. 3310.41(C)(1) and (2). The legislative service commission's analysis of 2005 Am.Sub.H.B. No. 699, the act which codified R.C. 3310.41, explained that under the ASP, "[e]ach child is counted in the enrollments of the child's resident school district (thereby crediting the district with state funding), and the amount of each scholarship is deducted from the district's state aid account."

{¶ 61} Parents of some of the affected children filed affidavits averring that their child's "application for [ASP] services * * * was approved." (Appellants' Mot. for Summ. Jgmt. at exhibit E.)  Thus, the children's scholarships were approved, but ODE did not release the scholarship funds to appellants. Because the children would have been counted in the average daily membership formula for their respective school districts, state funds would have been allocated to the children's school districts' state aid accounts. However, there is nothing in the record demonstrating whether the scholarship funds at issue remained with the school districts, or whether ODE removed the funds from the districts and retained the funds.

{¶ 62} Notably, at oral argument before this court, appellants' attorney admitted there was no evidence in the record depicting ODE's finances. Appellants had the burden to establish their unjust enrichment claim by a preponderance of the evidence. *San Allen* at ¶ 115. By failing to place evidence in the record demonstrating ODE removed and retained the scholarship funds from the affected school districts, appellants failed to establish they conferred a benefit on ODE.

{¶ 63} Furthermore, "a claim for unjust enrichment will not lie when the claimed entitlement to compensation is based upon a contract between the parties." *Parahoo v. Mancini*, 10th Dist. No. 97APE08-1071 (Apr. 14, 1998). Unjust enrichment "does not apply when a contract actually exists; it is an equitable remedy applicable only when the court finds there is no contract." *Corbin v. Dailey*, 10th Dist. No. 08AP-802, 2009-Ohio-881, ¶ 10.  *See also Daily Servs., LLC v. Ohio Bur. of Workers' Comp.*, 10th Dist. No. 13AP-509, 2013-Ohio-5716, ¶ 23.

{¶ 64} In their motion for summary judgment, appellants asserted the "contract or agreement between the parties" was the R.C. 3310.41 promise of "payment for ASP

services provided by registered private providers." (Appellants' Mot. for Summ. Jgmt. at 16.) Thus, as appellants' entitlement to compensation for the ASP services they provided was through the promise for payment contained in R.C. 3310.41, appellants were not entitled to the equitable remedy of unjust enrichment. Because appellants' Columbus and St. Clairsville locations were not registered private providers, R.C. 3310.41(D) precluded those locations from receiving ASP scholarship funds.

{¶ 65} Lastly, appellants note "ODE approved the St. Clairsville location * * * in April 2014 for FY 2014 but failed to pay SLG for the provided services." (Appellants' brief at 56.) St. Clairsville became a registered private provider on April 15, 2014, and appellants' claims for payment included claims for students that attended St. Clairsville during April, May, and June 2014. (*See* First Amended Complaint at exhibit A.)

{¶ 66} While appellants argue ODE failed to pay for the services appellants provided after St. Clairsville became a registered private provider, appellants did not assign this argument as an assignment of error. Pursuant to App.R. 12(A)(1)(b), appellate courts must " 'determine [an] appeal on its merits on the assignments of error set forth in the briefs under App.R. 16.' "  "Thus, this court rules on assignments of error only, and will not address mere arguments." *Ellinger v. Ho*, 10th Dist. No. 08AP-1079, 2010-Ohio-553, ¶ 70, citing *In re Estate of Taris*, 10th Dist. No. 04AP-1264, 2005-Ohio-1516, ¶ 5. *See also Bonn v. Bonn*, 10th Dist. No. 12AP-1047, 2013-Ohio-2313, ¶ 9. Accordingly, we do not address this argument.

{¶ 67} Based on the foregoing, appellants' second assignment of error is overruled.

{¶ 68} Having overruled appellants' first and second assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, J., concurs.
LUPER SCHUSTER, J., concurs in judgment only.

_____