[Cite as *Simballa v. Ohio Dept. of Natural Resources, Div. of Oil & Gas Resources Mgt.*, 2024-Ohio-5888.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Kevin J. Simballa, | : | |
| Appellant-Appellant, | : | |
| | : | No. 23AP-695 |
| v. | : | (C.P.C. No. 22CV-989) |
| Ohio Department of Natural Resources, Division of Oil and Gas Resources Management et al., | : | (REGULAR CALENDAR) |
| | : | |
| Appellees-Appellees. | : | |

D E C I S I O N

Rendered on December 17, 2024

**On brief:** *Krugliak, Wilkins, Griffiths & Doughtery Co., L.P.A.* and *Matthew W. Onest*, for appellant. **Argued:** *Matthew W. Onest*.

**On brief:** *Dave Yost,* Attorney General, *Gene Park*, and *Brian A. Ball*, for appellee State of Ohio. **Argued:** *Brian A. Ball*.

**On brief:** *Vorys, Sater, Seymour and Pease LLP*, *Gregory D. Russell*, *Thomas H. Fusonie*, and *Christopher A. LaRocco*, for appellee Hilcorp Energy Company. **Argued:** *Thomas H. Fusonie*.

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Appellant Kevin J. Simballa appeals the October 31, 2023 decision of the Franklin County Court of Common Pleas, which affirmed the February 10, 2022 order of the Ohio Oil and Gas Commission ("Commission"). The Commission's order dismissed Simballa's administrative appeal of the November 30, 2021 Chief's Order 2021-192 ("Chief's Order") to Hilcorp Energy Co. ("Hilcorp") as untimely.

{¶ 2}    Simballa owns a 38-acre piece of property in Columbiana County, and also owns the mineral rights to that property.  In 2012, Simballa leased those mineral rights to Hilcorp's predecessor-in-interest at a rate of $6,000 per acre plus 20 percent of gross royalties, and Hilcorp assumed that lease in 2013. But Hilcorp permitted that lease to lapse, and subsequently refused to renew it.  A letter from Simballa to Hilcorp indicated that Simballa remained willing to lease those rights to Hilcorp "**under the same terms as the lease which Hilcorp had acquired,** and which Hilcorp opted to let lapse." (Emphasis sic.)  (June 15, 2021 Letter, Attached as Ex. B to Simballa's appeal of the Chief's Order.)  Instead, Hilcorp responded with a "take-it-or-leave-it" counteroffer stating that it was willing to agree to an 18 month lease of the mineral rights for "**the requested 20% gross royalty and a onetime consideration of $10,000.00**."   (Emphasis sic.) (June 22, 2021 Letter, Attached as Ex. B to Simballa's appeal of the Chief's Order.)  Hilcorp gave Simballa 3 days to accept the offer, and if he failed to accept it by that deadline, Hilcorp stated it "will pursue the unitization process." *Id.*

{¶ 3}    Simballa did not accept the counteroffer, and on July 1, 2021 Hilcorp applied to the Commission to conduct unit operations.  Following a hearing on September 29, 2021, Hilcorp obtained the Chief's Order, under which Simballa's mineral rights were forcibly pooled into the "Elkrun Wertz Northeast Unit" ("Unit") and Hilcorp was authorized to conduct drilling operations in that Unit.  (Nov. 30, 2021 Order by the Chief No. 2021-192.)

{¶ 4}    The Chief's Order is dated November 30, 2021.  It was issued exclusively to Hilcorp and established that Hilcorp and the other property owners from whom it had obtained mineral rights were primarily responsible for the costs of operations. It also provided that "unleased mineral owners" would receive "a monthly cash payment equal to a one-eighth (1/8) share of the gross proceeds from production * * * based on the unit participation of each unleased mineral owner's tract," *id.* at ¶ 9c, and that once Hilcorp recovered 200 percent of the cost of drilling an initial well, "each unleased mineral owner shall receive a monthly cash payment equal to a seven-eighths (7/8) share of net proceeds from production (for that well) * * * based on the unit participation of each unleased mineral owner's tract." *Id.* at ¶ 9d. Simballa was the only identified "unleased mineral owner" named by the order, *id.* at Exhibit A, but these terms were apparently unsatisfactory to him.

{¶ 5}    It is undisputed that Simballa had a right to appeal the Chief's Order to the Oil and Gas Commission under R.C. 1509.36, which states "[t]he appeal shall be filed with the commission within thirty days after the date upon which the person to whom the order was issued received the order and, for all other persons adversely affected by the order, within thirty days after the date of the order complained of." The Chief's Order was issued Tuesday, November 30, 2021, but Simballa did not mail his appeal to the Commission until December 30, 2021, and it was not delivered to the Commission until at least December 31, 2021, when USPS tracking information suggests it was picked up by an authorized person at the postal facility. Moreover, the Commission was apparently closed that day, and the Commission did not actually note the filing of Simballa's appeal until Monday, January 3, 2022.

{¶ 6}    As result, both the appellee and intervenor Hilcorp argued that the appeal had to be dismissed for lack of jurisdiction, contending that Simballa was not "the person to whom the order was issued," but was simply a person "adversely affected by the order." For this reason, they argued that Simballa's appeal was required to be filed no later than Thursday, December 30, 2021, and the fact that the appeal was not mailed until the following day meant that the Commission lacked jurisdiction to entertain it. On February 10, 2022 the Commission agreed:

> Hilcorp is the one Order Recipient. Appellant is properly classed [under R.C. 1509.36] as a person adversely affected by the Order. As a person adversely affected by the Order, Appellant has thirty days after the issuance of the order complained to perfect his appeal to the Commission.
>
> * * *
>
> It is not contested that the Order was issued on November 30, 2021 and Appellant, who is a person adversely affected by this Order, received notice of the Order. Thirty days after November 30, 2021 is December 30, 2021, which is the last date Appellant could have timely filed his appeal as an adversely affected person. It is also not contested that Appellant's ***Notice of Appeal*** was filed on January 3, 2022. Hence, Appellant's Notice of Appeal was filed **four days** beyond the mandatory time limit imposed by Ohio law. That means Appellant missed the statutory deadline set out in R.C. 1509.36. Consequently the Commission lacks jurisdiction to hear this appeal. Since the General Assembly, by statute, has

limited the time to file an appeal to thirty days, the Commission has no discretion to extend that time period or to accept an appeal filed more than thirty days after issuance of the Chief's Order.

Appellants attempts to defend his untimely filing with a claim that a representative of the Division provided verbal instructions on the appeal process that he claims now support a claim of equitable estoppel. The Commission is not persuaded by this claim. Parties before the Commission are bound by a uniform set of laws and rules of practice and the Commission does not possess the authority to expand its jurisdiction based on the comments of an individual unaffiliated with the Commission. The Commission also notes that estoppel does not apply against the state.

Jurisdiction is not a matter of choice; but rather is an expression of the power and authority of a body to act. If the Commission's jurisdiction has not been properly invoked, the Commission simply is without authority to act. The Commission finds that Appellant's Notice of Appeal, is untimely under O.R.C. §1509.36 and will not invoke this Commission's jurisdiction.

(Emphasis sic.) (Ex. K, Order of the Commission at 3-5.)

{¶ 7} On February 16, 2022, Simballa filed a timely appeal of the Commission's ruling to the Franklin County Court of Common Pleas in accordance with R.C. 1509.37. The Commission filed a motion to dismiss, and briefing was completed on May 17, 2022. Seventeen months later, the court of common pleas issued a decision and affirmed the order of the Oil and Gas Commission dismissing Simballa's appeal:

Simballa's appeal centers on the following three issues as identified in his merit brief: 1.) whether the terms of R.C. §1509.36 are so vague that the statute is void for vagueness as set forth in *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294 (1972); 2.) whether the vagueness of R.C. §1509.36 violates the rights to due process and equal protection guaranteed by the Ohio and U.S. Constitutions; and 3.) whether the Oil and Gas Commission erred in dismissing Simballa's appeal of Chief's Order 2021-192 because Simballa filed the appeal within 30 days of the receipt of the notice.

* * *

[T]he Court finds Simballa did not perfect his appeal in Appeal No. 1006 within the time period expressly set forth in R.C.

§1509.36 and the Commission's Order dismissing that appeal
for lack of jurisdiction was lawful and reasonable.

* * *

[T]he Court finds R.C. §1509.36 is not unconstitutionally
vague. Furthermore, the Court finds Simballa's challenges to
the statute on due process and equal protection grounds are not
well taken. Finally, as found at the outset, the Commission's
Order dismissing Appeal No. 1006 was reasonable and lawful.

In light of the foregoing, the Court hereby renders judgment in
favor of Appellee ODNR. The Commission's Order is hereby
**AFFIRMED**.

(Emphasis sic.) (Oct. 31, 2023 Decision & Entry at 17-18, 20, 29.)

{¶ 8} Simballa has now appealed to this court, and asserts two assignments of error
with the trial court's judgment:

FIRST ASSIGNMENT OF ERROR: The trial court erred when
it affirmed the Ohio Oil and Gas Commission's dismissal of
Appellant's appeal because Appellant timely filed his appeal.

SECOND ASSIGNMENT OF ERROR: The trial court erred
when it affirmed the Ohio Oil and Gas Commission's dismissal
of Appellant's appeal because upholding that dismissal violates
Appellant's constitutional rights to due process and equal
protection.

{¶ 9} We will begin analysis of both assignments of error by clarifying the proper
standard for our review. Appeals to the Franklin County Court of Common Pleas from the
Oil and Gas Commission are generally governed by R.C. 1509.37, which provides in part:

In the hearing of the appeal the court is confined to the record
as certified to it by the commission. * * *

If the court finds that the order of the commission appealed
from was lawful and reasonable, it shall affirm the order. If the
court finds that the order was unreasonable or unlawful, it shall
vacate the order and make the order that it finds the
commission should have made. The judgment of the court is
final unless reversed, vacated, or modified on appeal.

In *Johnson v. Kell*, 89 Ohio App.3d 623 (10th Dist.1993), this court examined the scope of
the Common Pleas Court's review of Commission appeals:

The proper standard of review on appeal from the Oil and Gas Board of Review is whether the *board's* order was reasonable and lawful. Although the board reviews the *chief's* order under R.C. 1509.36 to determine whether the *chief's* order was reasonable and lawful in light of the evidence presented to the board during the hearing, the focus on appeal to the court of common pleas is on the board's order, not the chief's.

* * *

This court has previously defined "unlawful" and "unreasonable" * * *. " 'Unlawful' means that which is not in accordance with law." " 'Unreasonable' means that which is not in accordance with reason, or that which has no factual foundation." [W]e find the above definitions equally applicable here.

(Citations and quotations omitted.) *Id*. at 625-26. And in *Wehr v. Div. of Oil & Gas Resources Mgt.*, 10th Dist. No. 17AP-855, 2018-Ohio-5247, we examined the standard of review courts of appeals employ in cases such as this:

On further appeal from the common pleas court to this court, our standard of review is more restrictive. We determine only whether the common pleas court has abused its discretion. The term "abuse of discretion" implies not merely an error of judgment, but perversity of will, passion, prejudice, partiality or moral delinquency. However, on questions of law, the common pleas court does not exercise discretion, and this court's review is plenary.

(Citations and quotations omitted.) *Id*. at ¶ 14. This case turns in large part on the Commission's interpretation of R.C. 1509.36, and specifically its interpretation of the phrases "the person to whom the order was issued" and "other persons adversely affected by the order." Under our decision in *Wehr* such legal questions are subject to plenary review, and we observe that Supreme Court of Ohio recently confirmed this view

it is the role of the judiciary, not administrative agencies, to make the ultimate determination about what the law means. Thus, the judicial branch is *never* required to defer to an agency's interpretation of the law * * *. [A]n agency interpretation is simply one consideration a court *may* sometimes take into account in rendering the court's own independent judgment as to what the law is.

*TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 172 Ohio St.3d 225, 2022-Ohio-4677, ¶ 3. Accordingly, we review the statutory interpretation questions here, like the constitutional challenges and other pure questions of law, under a de novo standard of review. But under *Johnson* and *Wehr*, if the trial court did not abuse its discretion in concluding that the Board's determination of the facts was reasonable and lawful, we will not disturb it.

{¶ 10} In this case, the relevant facts are undisputed—the parties agree on the dates that Simballa mailed his notice of appeal and when it was filed by the Commission. We therefore conclude that the questions of whether the Commission's actions were "reasonable" and "lawful" are entirely subsumed into this court's de novo review of two questions, which correspond to Simballa's two assignments of error: first, whether the Commission's interpretation of R.C. 1509.36 and 1509.37 is correct and therefore Simballa's appeal was indeed filed after the deadline; and second, whether the statute's creation of two different filing deadlines for appeals to the Commission renders it unconstitutionally vague, or is otherwise a violation of Simballa's rights to either due process or equal protection of the law.

{¶ 11} Simballa contends in his first assignment of error that the language of R.C. 1509.36 is ambiguous susceptible of more than one reasonable interpretation, that the Commission's administrative rules created under the statute suggest that he had 30 days from the date of the receipt of the Chief's Order to file his appeal because he is an "order recipient," and that under this Court's decision in *Wehr* the time for filing Simballa's appeal did not begin to run until he received certified mail service of the service of the Chief's Order as an "order recipient." We will address each argument in turn, beginning with the relevant text of R.C. 1509.36:

> Any person adversely affected by an order by the chief of the division of oil and gas resources management may appeal to the oil and gas commission for an order vacating or modifying the order.
>
> The person so appealing to the commission shall be known as appellant and the chief shall be known as appellee. Appellant and appellee shall be deemed to be parties to the appeal.
>
> The appeal shall be in writing and shall set forth the order complained of and the grounds upon which the appeal is based.

> *The appeal shall be filed with the commission within thirty days after the date upon which the person to whom the order was issued received the order and, for all other persons adversely affected by the order, within thirty days after the date of the order complained of.* Notice of the filing of the appeal shall be filed with the chief within three days after the appeal is filed with the commission.

(Emphasis added.) R.C. 1509.36. There is no dispute that Simballa qualifies as a person "adversely affected by the order" who may appeal it. The issue comes in the third paragraph of the statute, which creates two different deadlines for the filing of an appeal—the first for "the person to whom the order was issued," who is permitted to file no later than "thirty days after the date upon which [that person] received the order," and the second for "all other persons adversely affected by the order" who must file "within thirty days after the date of the order complained of." It is undisputed that Simballa filed beyond "thirty days after the date of the order complained of"—even assuming that his appeal was filed when it was picked up from the post office it was already one day after that deadline, and because the Commission was closed on that date it was not actually deemed filed until at least three days after that. There is no dispute that Hilcorp is a "person to whom the order was issued," as the order is directed exclusively to Hilcorp—the dispute is whether Simballa is also such a "person to whom the order was issued," because if he is not, his appeal was untimely under the statute.

{¶ 12} Simballa contends that the statute does not specifically define the "person to whom the order was issued," and that the phrase is ambiguous. He observes under R.C. 1.43(A) "[t]he singular includes the plural, and the plural includes the singular," and argues that because the statutory term "person" can be deemed to be plural, that we must examine the Commission's administrative rules to determine whether he qualifies as a "person to whom the order was issued." He then argues that because the rules use the similar term "order recipient," (defined as "any person that is the subject of an order issued by the chief requiring such person to either perform some act or refrain from some course of activity, or informing said person of certain rights, duties or obligations," Ohio Adm.Code 1509-1-02(K)), a definition which Simballa argues clearly applies to him, that we should conclude that the statutory phrase must be defined by the regulatory one. Based on this

interpretation, Simballa concludes that he was not required to file until 30 days after he received the order, thereby making his appeal timely.

{¶ 13} This argument is frankly too complex and proves too much. We believe Simballa's argument fails at the outset, since before we can even consider relying upon R.C. 1.43(A) or Ohio Adm.Code 1509-1-02(K) to interpret R.C. 1509.36, we must conclude the statute is ambiguous, as "only where the words of a statute are ambiguous, uncertain in meaning, or conflicting that a court has the right to interpret a statute." *Gerritsen v. State Med. Bd. of Ohio*, 10th Dist. No. 22AP-466, 2023-Ohio-943, ¶ 15, quoting *Silver Lining Grp. EIC Morrow Cty. v. Ohio Dept. of Edn. Autism Scholarship Program*, 10th Dist. No. 16AP-398, 2017-Ohio-7834, ¶ 34 (internal citation and quotation omitted.). And we cannot find such a required ambiguity, because in context the phrase "person to whom the order was issued" has a plain meaning that is not susceptible to more than one reasonable interpretation. *Compare with Columbus v. Mitchell*, 10th Dist. No. 16AP-322, 2016-Ohio-7873, ¶ 6, citing *State ex rel. Toledo Edison Co. v. Clyde*, 76 Ohio St.3d 508, 513 (1996). Reliance upon the fact that the statutory term "person" includes both singular and plural to create an ambiguity where it would not otherwise exist places the cart prior to the horse— while it is acceptable to find that the word "person" includes both, it is not *necessary* for the word to always do so, since "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." R.C. 1.42.

{¶ 14} Such a contextual reading is demonstrated in *Wehr*, 2018-Ohio-5247, upon which *Simballa* mistakenly relies. In *Wehr*, this court noted an ambiguity in the former version of R.C. 1509.36, because that version of the statute provided that an "appellant" could file a notice of appeal "within thirty days after the date upon which the appellant received notice by certified mail." Former R.C. 1509.36 (effective September 10, 2012). The *Wehr* court determined the use of the undefined term "appellant" made the statute's later use of "all other persons adversely affected by the order" problematic, since it was difficult to determine who fell into which of the two categories. *See id.* at ¶ 19. But the General Assembly has since amended R.C. 1509.36, presumably at least partially in response to *Wehr*. Under the statute's former version, we would likely have concluded that Simballa was an "appellant" under the statute, and that therefore his administrative appeal filing clock did not begin to run until he received certified mail notice of the Chief's Order. *See*

*Id.* at ¶ 23. But the current version of the statute replaces the word "appellant" with the phrase "person to whom the order is issued," thereby resolving the ambiguity and rendering Simballa's argument a nullity.

{¶ 15} Here, where the statutory language plainly creates two alternative classes, it defies those plain terms to find ambiguity and collapse the distinction between those classes, and to turn Simballa from a member of one class into a member of the other. Therefore, we find that both the Commission and the trial court correctly concluded that Simballa was not a "person to whom the order is issued" under R.C. 1509.36, and that therefore his administrative appeal was untimely. We accordingly overrule Simballa's first assignment of error.

{¶ 16} In his second assignment of error, Simballa argues that the statute is unconstitutionally vague in violation of due process, and that it unconstitutionally violates his right to equal protection of the laws. In determining the constitutionality of an ordinance, the court is to presume the constitutionality of lawfully enacted legislation. And the legislation being challenged will not be invalidated unless it is established that it is unconstitutional beyond a reasonable doubt. *See, e.g.*, *Arnold v. City of Cleveland*, 67 Ohio St.3d 35, 38-39 (1993) (citations and quotations omitted).

{¶ 17} In *In re Columbus S. Power Co.*, 134 Ohio St.3d 392, 2012-Ohio-5690, the Supreme Court of Ohio observed that vagueness need not always render a statute unconstitutional:

> Tolerance for vagueness depends in part on the nature of the enactment. Some statutes trigger relatively strict vagueness review, such as eminent-domain statutes, statutes imposing criminal sanctions, and statutes implicating constitutionally protected rights.
>
> In contrast, laws directed to economic matters are subject to a less strict vagueness test than laws interfering with the exercise of constitutionally protected rights. That is, a greater degree of ambiguity will be tolerated in statutes which merely impose civil, as opposed to criminal penalties and when the statute regulates the conduct of businesses.
>
> [The challenged statute] is a civil statute directed to economic matters in a highly regulated industry, and it does not implicate any constitutionally protected conduct. Therefore, we apply a less strict vagueness test.

(Citations and quotations omitted.)  *Id.* at ¶ 13-15.  Given that the challenged statute is "a civil statute directed to economic matters in a highly regulated industry," it is subject to less stringent vagueness review. Notwithstanding, as the United States Supreme Court has observed:

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked.

(Citations and quotations omitted.)  *Grayned v. Rockford*, 408 U.S. 104, 108-09 (1972). "The void-for-vagueness doctrine is a component of the right to due process and is rooted in concerns that laws provide fair notice and prevent arbitrary enforcement." *In re Columbus S. Power Co* at ¶ 20, quoting *Skilling v. United States*, 561 U.S. 358 (2010).

{¶ 18}  A statute can be impermissibly vague for either of two independent reasons: (1) It fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits, or (2) it authorizes or even encourages arbitrary and discriminatory enforcement. *161 Dublin, Inc. v. Ohio State Liquor Control Comm.*, 10th Dist. No. 01AP-134, 2001 Ohio App. LEXIS *31 (Dec. 27, 2001), citing *Hill v. Colorado*, 530 U.S. 703, 732 (2000). To prevail, the challenging party must show that the statute is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *In re Columbus S. Power Co* at ¶ 20, quoting *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971).  *See also State v. Anderson*, 57 Ohio St.3d 168, 171 (1991).

{¶ 19} None of these concerns are present in this case. As we have observed in addressing Simballa's first assignment of error, the filing requirement of R.C. 1509.36 applies to a definite and identifiable group of people ("all other persons adversely affected by the order") and states a definite and identifiable rule (an appeal to the Oil and Gas Board must be filed "within thirty days after the date of the order complained of"). Simballa has basically recast his statutory ambiguity argument as a constitutional void-for-vagueness one, but both lack merit for the same reasons.

{¶ 20} Simballa also contends that the statute violates his right to equal protection of the laws. Because the statute by its own terms does not implicate a suspect classification or affect a fundamental right, it is subject to rational basis review. *See, e.g.*, *Roseman v. Firemen & Policemen's Death Benefit Fund*, 66 Ohio St.3d 443, 447 (1993). Under that level of review, "[t]he classification will not violate the Equal Protection Clause if it bears a rational relationship to a legitimate governmental interest." *Id.*, citing *e.g., Menefee v. Queen City Metro,* 49 Ohio St.3d 27, 29 (1990). "We must uphold the statute unless the classification is irrelevant to achievement of the state's purpose." *Roseman* at 447, citing *e.g.*, *McGowan v. Maryland*, 366 U.S. 420 (1961). But if a classification is not justified by a legitimate state interest, this court must strike down the discriminatory law creating the classification which treats similarly situated individuals differently. *Id.* at 447 (citing cases). "A party who challenges a statute on equal-protection grounds must demonstrate 'either that there was no rational basis for the creation of the class itself or that those within the class are not being treated equally in the furtherance of a legitimate governmental interest.' " *Simpkins v. Grace Brethren Church of Delaware, Ohio*, 149 Ohio St.3d 307, 2016-Ohio-8118, ¶ 48, quoting *Morris v. Savoy*, 61 Ohio St.3d 684 (1991).

{¶ 21} Simballa argues that there is no rational basis for the distinction between the two classes made by the statute—"the person to whom the order was issued" as opposed to "all other persons adversely affected by the order." We disagree. As the Commission argues, it is often difficult to tell exactly who might be adversely affected by a decision, and the Commission argues that it "should not have to guess whether someone is 'adversely affected.' It is up to the person who is adversely affected to assert their rights." (Brief of Appellee State of Ohio at 25.) We agree, and for this reason conclude that the distinction between the two classes is a rational one.

{¶ 22} To be fair, we are much less certain that there is a plausible reason to have different appeal deadlines for those two statutory classes, as the differing deadlines lead to the precise kind of confusion that can be seen in this case. We observe that it would be far more sensible for the distinction to have a different effect, for instance, establishing an appellate pleading requirement that "other persons adversely affected" must provide a summary of such adverse effects. But judges are not legislators, and judges are not members of the Ohio Oil and Gas Commission. It is not within the judicial function to second-guess the effects of the distinction made in the statute. In this case, all this court can do is examine whether the classification survives rational basis review, and even if it is unwise, it is undoubtedly rational. Accordingly, his second assignment of error is overruled.

{¶ 23} For all these reasons, Simballa has not established that R.C. 1509.36 is unconstitutionally vague or violates his right to equal protection of the laws. Having overruled Simballa's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

MENTEL, P.J., and JAMISON, J., concur.

_____