[Cite as *Howard v. Ohio State Racing Comm.*, 2019-Ohio-4013.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Carl Howard,                                  :

       Appellant-Appellant,     :          No. 18AP-349
                                                            (C.P.C. No. 18CV-982)
v.                                            :
                                                       (REGULAR CALENDAR)
Ohio State Racing Commission,    :

       Appellee-Appellee.         :

---

D E C I S I O N

Rendered on September 30, 2019

---

**On brief**: *Graff & McGovern, LPA*, and *John A. Izzo*, for appellant. **Argued**: *John A. Izzo.*

**On brief**: *Dave Yost*, Attorney General, *Charles E. Febus*, and *Tammy V. Chavez*, for appellee. **Argued**: *Tammy V. Chavez.*

---

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Appellant, Carl Howard, appeals from a judgment of the Franklin County Court of Common Pleas affirming the order of appellee, Ohio State Racing Commission ("commission"). For the reasons that follow, we affirm the judgment of the common pleas court.

{¶ 2} Appellant is a licensed horse owner. On June 10, 2017, appellant's horse, Primo Giovanni, raced in the sixth race at Scioto Downs. The horses in the race could be claimed for up to $30,000. Joshua Sutton was the driver of Primo Giovanni.

{¶ 3} Starlite Kid was leading the race at the end of the first quarter mile. In the second quarter mile, Primo Giovanni moved from fourth to first place. After Primo Giovanni took the lead, a horse further back in the pack, Snowball's Romeo, broke stride.

The horse behind Snowball's Romeo had to swerve to the inside of the track to avoid a collision. Lex Vegas passed Primo Giovanni in the stretch to win the race. Primo Giovanni finished second.

{¶ 4}    Following the race, the track judges issued the inquiry sign indicating the race was under review. The three track judges reviewed a video recording of the race and spoke to two of the drivers from the race. Aaron Merriman, who drove Starlite Kid, informed the judges that "[i]t wasn't [his] fault. Yes, [he] noticed the pace slowing up, and [he] had to grab ahold of [his] horse." (Sept. 8, 2017 Tr. at 41.) Tyler Smith, who drove Snowball's Romeo, informed the judges that after Primo Giovanni took the lead "[t]he pace slowed, absolutely. Caused [his] horse to make a break. These are $30,000 claimers, and they're hard to slow down." (Sept. 8, 2017 Tr. at 41.)

{¶ 5}    The track judges concluded that Primo Giovanni slowed down after taking the lead which caused confusion or interference among trailing horses and caused a horse to break stride. As such conduct amounted to a violation of the driving rules contained in Ohio Adm.Code 3769-17-11, the track judges disqualified Primo Giovanni from second to tenth place in the race. Appellant and Sutton both appealed the track judges' ruling to the commission.

{¶ 6}    The commission consolidated the cases and set the matter for a July 27, 2017 hearing before a hearing officer. Although the parties appeared for the July 27, 2017 hearing, the hearing officer did not appear. The commission unconsolidated the cases, and rescheduled appellant's hearing for September 8, 2017. Sutton subsequently settled his appeal with the commission.

{¶ 7}    At the September 8, 2017 hearing, the commission presented testimony from two of the track judges who judged the race at issue: Presiding Judge John Yinger and Associate Judge Thomas Hope. The judges explained how Primo Giovanni slowed down after taking the lead, and how the slowdown caused confusion and interference among trailing horses and caused Snowball's Romeo to break stride. However, the judges testified they did not believe Sutton acted intentionally to slow Primo Giovanni down. Appellant, appearing pro se, presented testimony from horse trainer Virgil Morgan, Jr. The witnesses all reviewed the videotaped recording of the race at the hearing.

{¶ 8} At the conclusion of the evidence, the hearing officer asked whether a violation of the driving rules had to be intentional. Assistant Attorney General Michael Rzymek informed the hearing officer the rules did not require intentional conduct.

{¶ 9} The hearing officer issued a report and recommendation on October 25, 2017, recommending the commission reverse the track judges' ruling. The hearing officer concluded that "although Primo Giovanni slowed slightly after taking the lead near the half mile pole, his times for the second quarter mile were reasonably competitive." (Report & Recommendation at 6.) The hearing officer further concluded that a requirement of intentional conduct should be implied in Ohio Adm.Code 3769-17-11. As the hearing officer found no evidence indicating Sutton acted intentionally to slow Primo Giovanni down or cause interference with other horses in the field, the hearing officer concluded the commission had failed to establish a violation of Ohio Adm.Code 3769-17-11.

{¶ 10} The commission reviewed the hearing officer's report and recommendation at an open hearing on January 18, 2018. The commission heard argument from Rzymek, who had become the commission's deputy director, Assistant Attorney General Charles E. Febus, and appellant. Following a private deliberation, the commission voted unanimously to reverse the hearing officer's recommendation and uphold the track judges' ruling.

{¶ 11} On January 24, 2018, the commission issued a notification of adjudication to appellant containing its adjudication order. The adjudication order denied appellant's appeal, and upheld the track judges' ruling that Primo Giovanni be disqualified from second to tenth place.

{¶ 12} Appellant filed a timely R.C. 119.12 appeal of the commission's order to the common pleas court. On April 24, 2018, appellant, now represented by counsel, filed a brief in the common pleas court asserting the commission's order was not based on reliable, probative, and substantial evidence and was not in accordance with law. Appellant further asserted he had been denied due process in the administrative proceedings. The commission filed a brief in the common pleas court on May 8, 2018.

{¶ 13} On May 15, 2018, the common pleas court issued a decision and entry affirming the commission's adjudication order. The court found no merit to appellant's contention that he was denied due process in the administrative proceedings and concluded

the commission's order was supported by reliable, probative, and substantial evidence and was in accordance with law.

{¶ 14} Appellant filed a timely appeal to this court, and presents the following two assignments of error for our review:

> Assignment of Error Number 1: The Commission Order is not in accordance with law.
>
> Assignment of Error Number 2: The Commission's Order is not based upon reliable, probative, and substantial evidence.

{¶ 15} In an administrative appeal, pursuant to R.C. 119.12, the common pleas court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and whether the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-11 (1980). Reliable, probative, and substantial evidence has been defined as follows:

> (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.

*Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).

{¶ 16} The trial court's "review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). The trial court "must give due deference to the administrative resolution of evidentiary conflicts," although "the findings of the agency are by no means conclusive." *Conrad* at 111. The common pleas court conducts a de novo review of questions of law, exercising its independent judgment in determining whether the administrative order is " 'in accordance with law.' " *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993), citing R.C. 119.12.

{¶ 17} An appellate court's review of an administrative decision is more limited than that of the common pleas court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). The appellate court is to determine only whether the common pleas court abused its discretion. *Id.*; *Lorain City School Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261 (1988). The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Absent an abuse of discretion, this court may not substitute its judgment for that of the administrative agency or the trial court. *Pons* at 621. However, on the question of whether the commission's order was in accordance with the law, this court's review is plenary. *Kistler v. Ohio Bur. of Workers' Comp.*, 10th Dist. No. 04AP-1095, 2006-Ohio-3308, ¶ 9.

{¶ 18} For ease of discussion, we address appellant's second assignment of error first. Appellant's second assignment of error asserts the commission's order was not supported by reliable, probative, and substantial evidence.

{¶ 19} Under the authority granted by R.C. 3769.03, the commission adopted Ohio Adm.Code 3769-17-11 establishing the driving rules. Ohio Adm.Code 3769-17-11 provides, in pertinent part, as follows:

> (A) Although a leading horse is entitled to any part of the track, neither the driver of the first horse or any other driver in the race shall do any of the following things, which shall be a violation of driving rules:
>
> * * *
>
> (7) Sit down in front of a horse or take up abruptly in front of other horses so as to cause confusion or interference among trailing horses;
>
> * * *
>
> (9) Commit any act which shall impede the progress of another horse or cause him to break[.]

{¶ 20} Yinger explained the term "sitting down in front of horses" meant abruptly slowing one's pace after moving in front of other horses. (Sept. 8, 2017 Tr. at 37.) Yinger stated Sutton "slowed up the pace abruptly" after moving to the front of the pack which "caused confusion amongst trailing horses." (Sept. 8, 2017 Tr. at 37.) Yinger identified on

the video recording of the race how, after Sutton cleared to the front, "the second, the third, the fourth - - the horses along the inside start to, what we like to call, jam up and just get on top of each other." (Sept. 8, 2017 Tr. at 36.) Yinger noted it was "like a pinball effect" following Primo Giovanni's slowdown, as the horses in the middle of the field jammed up, causing Snowball's Romeo to "run over the guy in front of him" and break stride. (Sept. 8, 2017 Tr. at 37, 41.)

{¶ 21} Hope testified that after Sutton took the lead, he "slowed down a little bit and caused confusion amongst trailing horses." (Sept. 8, 2017 Tr. at 79.) Hope noted that confusion among trailing horses was evident because "[a]ll the horses bunched up. The second, third, fourth horse - - you know, they all bunched up. These two horses in the back make breaks." (Sept. 8, 2017 Tr. at 79-80.)

{¶ 22} Appellant asserts that because Primo Giovanni's time for the second quarter mile was faster than average, he could not have slowed down as much as the judges claimed he did. Although there was testimony indicating Primo Giovanni's time for the second quarter mile was average, Yinger specifically stated his ruling was not based on the time it took the horses to complete each quarter mile. Rather, Yinger explained "you could just see the pace, watching it live, go fast to slow," and the "other horses slowed down accordingly." (Sept. 8, 2017 Tr. at 67.) Moreover, Yinger noted that after Sutton slowed down, he "actually sped back up again." (Sept. 8, 2017 Tr. at 69.)

{¶ 23} Appellant contends because the horse immediately behind Primo Giovanni, Starlite Kid, was unaffected by the alleged slowdown, the evidence fails to demonstrate a violation of the driving rules. The hearing officer found the fact that Starlite Kid was able to avoid contact with Primo Giovanni to be "the most compelling argument against a finding that the driver made him sit down in front of a horse." (Report & Recommendation at 4-5.)

{¶ 24} Although Starlite Kid did not break stride or swerve, Yinger identified how after Sutton got in front of Merriman, Merriman began "seesawing. It's when they have to grab ahold of their horse, and they're doing this to try to slow them down." (Sept. 8, 2017 Tr. at 40.) The video depicts Merriman moving back and forth in the seesawing motion Yinger described. Merriman told the judges after the race that the pace slowed down after Sutton took the lead, and that Merriman had to grab ahold of his horse.

{¶ 25} Ohio Adm.Code 3769-17-11(A)(7) prohibits sitting down in front of a horse which causes interference among "trailing horses." Thus, the interference prohibited by the rule could occur to any trailing horse. Yinger noted the "chain reaction" resulted from Primo Giovanni's slowdown, as Merriman had to slow his horse down, causing the horses behind him to slow down and jam up, causing Snowball's Romeo to break stride. (Sept. 8, 2017 Tr. at 65, 121.)

{¶ 26} The track judges' testimony in conjunction with the video of the race provided reliable, probative, and substantial evidence demonstrating a violation of Ohio Adm.Code 3769-17-11(A)(7) and (9). The evidence demonstrated Primo Giovanni slowed down after taking the lead, causing a chain reaction which resulted in confusion and interference among trailing horses and caused a horse to break stride.

{¶ 27} Appellant asserts the commission erred by failing to accord due deference to its hearing officer's finding that Primo Giovanni did not sit down in front of a horse. "[A]n administrative agency should accord due deference to a hearing examiner's findings and recommendations, especially where evidentiary conflicts exist." *Bennett v. State Med. Bd. of Ohio*, 10th Dist. No. 10AP-833, 2011-Ohio-3158, ¶ 31, citing *Freeman v. Ohio Dept. of Human Servs.*, 10th Dist. No 95APE03-359 (Dec. 14, 1995). However, an agency is not required to follow the recommendation of the hearing officer. *Trout v. Ohio Dept. of Edn.*, 10th Dist. No. 02AP-783, 2003-Ohio-987, ¶ 17. The agency "may independently review the evidence and make its own findings and draw its own conclusions from the evidence." *Id.* While the hearing officer was persuaded by the fact Starlite Kid was able to avoid contact with Primo Giovanni, the commission, in its independent review of the evidence, was entitled to rely on Yinger's and Hope's testimonies to find a violation of the driving rules.

{¶ 28} Based on the foregoing, we find no abuse of discretion in the common pleas court's conclusion that reliable, probative, and substantial evidence supported the commission's order.

{¶ 29} Appellant's second assignment of error is overruled.

{¶ 30} Appellant's first assignment of error asserts the commission's order was not in accordance with law. Appellant contends the commission violated R.C. 119.09 when it failed to provide reasons for modifying or disapproving the hearing officer's report and

recommendation, and that he did not receive due process in the administrative proceedings.

{¶ 31} Following their private deliberation at the January 18, 2018 hearing, Commissioner Winters stated on the record that the commission "believe[d] that the Hearing Officer did not have the same qualifications as those track judges, and, therefore, we do not adopt the Hearing Officer's report, and we do adopt the track judges' initial finding." (Jan. 18, 2018 Tr. at 71.) The January 24, 2018 notification of adjudication explained the commission's findings as follows:

> After deliberating the Commission agrees with the hearing officer and finds that Josh Sutton driving Primo Giovanni did slow down after going from fourth place to first place. The Commission finds that this slowing down caused confusion or interference among trailing horses and this act impeded the progress of other horses in the race and caused a horse to break.
>
> After deliberating [the] Commission finds that the hearing officer did not correctly apply OAC 3769-17-11 and disapproves the recommendation of the hearing officer as it relates to not finding a violation. The hearing officer required the Commission to show the violation of this section was a deliberate act which is not required by the rule. The hearing officer added an element of intent which is not required to be shown by this section.

(Notification of Adjudication at ¶ 10-11.)

{¶ 32} Appellant asserts the only reason provided by the commission for rejecting the hearing officer's report and recommendation was the commission's statement regarding the hearing officer's qualifications at the January 18, 2018 hearing. Appellant contends the commission's stated reason was "ridiculous" and merely "an 'easy out' to rule against a licensee." (Appellant's Brief at 19.)  Appellant claims the statements contained in the January 24, 2018 notification of adjudication were "fabrications" which "were never said by the Commissioners and should not be attributed to them." (Appellant's Brief at 19.)

{¶ 33} R.C. 119.09 provides the report and recommendation issued by an agency's hearing officer "may be approved, modified, or disapproved by the agency." If the agency "modifies or disapproves the recommendations of the referee or examiner it shall include in the record of its proceedings the reasons for such modification or disapproval." R.C.

119.09. *See also Bennett* at ¶ 16 (holding the R.C. 119.09 requirement that an agency state its reasons for modifying or disapproving a hearing examiner's recommendation "is mandatory").

{¶ 34} Just as a court speaks through its journal entries, an administrative agency speaks through its orders. *See Infinite Sec. Solutions, L.L.C. v. Karam Properties II, Ltd.*, 143 Ohio St.3d 346, 2015-Ohio-1101, ¶ 29 (holding that "a court speaks only through its journal entries"); *State ex rel. Ewart v. Indus. Comm.*, 76 Ohio St.3d 139, 142 (1996) (holding that the industrial "commission speaks through its orders, not internal memoranda"); *Gwinn v. Ohio Elections Comm.*, 187 Ohio App.3d 742, 2010-Ohio-1587, ¶ 18 (10th Dist.) (holding that "[l]ike a court, the elections commission speaks through its record"); *Hurless v. Mead Corp.*, 29 Ohio App.2d 264, 269 (4th Dist.1971) (stating that "[a]s a court speaks through a journal, an administrative agency speaks through its orders"). Furthermore, "[a]bsent a showing to the contrary, we must presume the regularity of the administrative proceedings." *Cowans v. Ohio State Racing Comm.*, 10th Dist. No. 13AP-828, 2014-Ohio-1811, ¶ 23.

{¶ 35} The notification of adjudication presents the procedural background of the case followed by the commission's adjudication order. The procedural background section of the notification states the commission's findings, including its findings that Sutton slowed down after moving to first place which caused confusion or interference among trailing horses and caused a horse to break, and that the hearing officer erred by imputing an element of intent into Ohio Adm.Code 3769-17-11. The adjudication order states that "[b]ased on the facts set forth in the preceding section" the commission would deny appellant's appeal and uphold the track judges' ruling. (Adjudication Order.)

{¶ 36} The statements contained in the notification of adjudication, which were incorporated into the adjudication order, were the commission's statements. The statements in the notification of adjudication satisfied the commission's R.C. 119.09 obligation to state its reasons for modifying or disapproving the hearing officer's recommendation. As the plain language of Ohio Adm.Code 3769-17-11 does not contain any reference to intentional conduct, the commission's conclusion that a violation of Ohio Adm.Code 3769-17-11 did not have to be intentional was reasonable and in accordance with

law. *See State ex rel. V&A Risk Servs. v. Ohio Bur. of Workers' Comp.*, 10th Dist. No. 11AP-742, 2012-Ohio-3583, ¶ 23.

{¶ 37} The proceedings before the commission all concerned whether the evidence demonstrated a violation of Ohio Adm.Code 3769-17-11(A)(7) and (9), and whether that code section required intentional conduct. The January 24, 2018 notification of adjudication addressed both issues. Although the commission noted the hearing officer's qualifications at the January 18, 2018 hearing, it did not indicate the hearing officer's qualifications were the exclusive basis for its decision. Accordingly, presuming regularity in the administrative proceedings, we find the commission's statement at the January 18, 2018 hearing was not dispositive of the case. *Compare Cowans* at ¶ 40, citing *Houser v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 10AP-116, 2011-Ohio-1593, ¶ 21 (noting the "mere fact that the Commission did not explicitly state on the record that it had considered appellant's objections [did] not mean that it did not consider the entire record of proceedings, including appellant's objections, before rendering its decision"); *Roy v. Ohio State Med. Bd.*, 80 Ohio App.3d 675, 686 (10th Dist.1992) (observing that, as the "statements of the hearing examiner [were] extraneous dicta," the statements "were not dispositive of the board's decision and did not affect substantial rights of appellant").

{¶ 38} Moreover, as the commission adequately stated its reasons for rejecting the hearing officer's recommendation in the notification of adjudication, and the commission's order was supported by reliable, probative, and substantial evidence, appellant fails to demonstrate any prejudice resulting from the commission's statement at the January 18, 2018 hearing. *See Abunku v. State Med. Bd. of Ohio*, 10th Dist. No. 11AP-906, 2012-Ohio-2734, ¶ 20 (concluding that, "even if it was inappropriate for the hearing examiner to admit the DEA's [drug enforcement administration's] order to show cause into evidence," the appellant "was not prejudiced because other reliable, probative, and substantial evidence in the record prove[d]" the violations).

{¶ 39} Appellant asserts he was denied due process when the commission failed to file written objections to the hearing officer's report and recommendation, and when the commission failed to deliberate in open session. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the

pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Procedural due process is not a technical concept but, rather, concerns fundamental fairness. *Gross v. State Med. Bd. of Ohio*, 10th Dist. No. 08AP-437, 2008-Ohio-6826, ¶ 20. Thus, the fundamental requirement of procedural due process is "notice and hearing, that is, an opportunity to be heard." *Korn v. Ohio State Med. Bd.*, 61 Ohio App.3d 677, 684 (10th Dist.1988).

{¶ 40} Appellant asserts Rzymek's oral objections to the hearing officer's report and recommendation presented at the January 18, 2018 hearing deprived appellant of a fundamentally fair hearing. R.C. 119.09 provides that a "party may" file "written objections to the report and recommendation." However, there is "[n]othing in the language of R.C. 119.09 or in 119.12 * * * indicat[ing] that a party *must* file objections." (Emphasis sic.) *Harrison v. Ohio Veterinary Med. Licensing Bd.*, 10th Dist. No. 00AP-254 (Dec. 19, 2000). The failure to file written objections to a hearing examiner's report does not operate as a waiver of matters otherwise litigated during the R.C. Chapter 119 evidentiary hearing. *Id.* Thus, R.C. 119.09 did not obligate the commission to file written objections to the hearing officer's report and recommendation. *Compare Brindle v. State Med. Bd. of Ohio*, 168 Ohio App.3d 485, 2006-Ohio-4364, ¶ 31 (holding that R.C. 119.09 "does not expressly prohibit a representative of the agency from filing objections to the report and recommendation").

{¶ 41} Appellant contends he was "blindsided" by Rzymek's oral objections at the January 18, 2018 hearing. (Appellant's Brief at 27.) Rzymek argued at the January 18, 2018 hearing that the hearing officer had misapplied the law, as the driving rules did not require intentional conduct by a driver. The issue of whether the driving rules required intentional conduct was discussed at the September 8, 2017 hearing, and was addressed in the hearing officer's report and recommendation. The notice regarding the January 18, 2018 hearing informed appellant that the report and recommendation would be discussed at the upcoming hearing.

{¶ 42} Appellant responded to Rzymek's argument at the January 18, 2018 hearing. Appellant asserted the commission's staff was "getting hung up on one word, deliberately," as the "key point[]" was that the hearing officer "did not believe that [appellant's] horse, Primo Giovanni, caused any slowdown." (Jan. 18, 2018 Tr. at 60.) Appellant noted Primo Giovanni's time for the second quarter mile, and asserted that "[a]s horsemen in the room

and in front of me know, you can't just pull a horse back and make it go again and do a quarter of a mile in 28 and 3 seconds. You'd choke a horse down." (Jan. 18, 2018 Tr. at 67.) Accordingly, the record fails to support appellant's contention that he was blindsided by Rzymek's arguments or that the lack of written objections deprived him of due process.

{¶ 43} Appellant asserts he was deprived due process when the commission violated the Open Meetings Act. Although the hearing before the commission was open to the public, the commission privately deliberated on the resolution of appellant's case.

{¶ 44} "Ohio's 'Sunshine Law,' R.C. 121.22, requires that public officials, when meeting to consider official business, conduct those meetings in public." *State ex rel. Cincinnati Post v. Cincinnati*, 76 Ohio St.3d 540, 542 (1996). The law requires public officials take official action and conduct deliberations upon official business only in "open meetings." R.C. 121.22(A). A "meeting" is defined as a prearranged discussion of the public business of the public body by a majority of its members. R.C. 121.22(B)(2). A quasi-judicial hearing is not considered a meeting for purposes of R.C. 121.22. *State ex rel. Ross v. Crawford Cty. Bd. of Elections*, 125 Ohio St.3d 438, 2010-Ohio-2167, ¶ 25. Thus, the "Sunshine Law does not apply to adjudications of disputes in quasi-judicial proceedings." *TBC Westlake, Inc. v. Hamilton Cty. Bd. of Revision*, 81 Ohio St.3d 58, 62 (1998).

{¶ 45} A quasi-judicial proceeding involves a "justiciable dispute requiring evaluation and resolution. Implicit in this concept is the exercise of discretion." *Rossford Exempted Village School Dist. v. State Bd. of Edn.*, 45 Ohio St.3d 356, 359 (1989). "The Supreme Court has further indicated that quasi-judicial proceedings require notice, hearing, and the opportunity for introduction of evidence." *Electronic Classroom of Tomorrow v. Ohio State Bd. of Edn.*, 10th Dist. No. 17AP-510, 2018-Ohio-716, ¶ 20, citing *Union Title Co. v. State Bd. of Edn.*, 51 Ohio St.3d 189, 191 (1990).

{¶ 46} Appellant received notice, a hearing, and the opportunity to introduce evidence in the administrative proceedings. The commission had the discretion to determine whether the evidence presented at the hearing demonstrated a violation of Ohio Adm.Code 3769-17-11. Accordingly, the proceedings before the commission were quasi-judicial in nature, and R.C. 121.22 did not obligate the commission to deliberate in public.

{¶ 47} Based on the foregoing, appellant's first assignment of error is overruled.

{¶ 48} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT, P.J., and DORRIAN, J., concur.
_____